**Anthony Quinn COOK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70730.**

Court of Criminal Appeals of Texas, En Banc.

April 7, 1993.

Rehearing Denied June 30, 1993.

Troy C. Hurley, Temple, for appellant.

Hollis C. Lewis, Jr., County Atty., Cameron, Charles H. Van Orden, Sp. Prosecutor, Belton, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BAIRD, Judge.

Appellant was convicted of capital murder pursuant to Tex.Penal Code Ann. § 19.-03(a)(2).[1] The jury affirmatively answered the punishment issues submitted pursuant to Tex.Code Crim.Proc.Ann. art. 37.-071(b)(1) and (2).[2] Punishment was assessed at death. *Id.* at (e). Appeal to this Court is automatic. *Id.* at (h). We will affirm.

1. Tex.Penal Code Ann. § 19.03(a)(2) provides:
   § 19.03. Capital Murder
      (a) a person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:
      \*  \*  \*  \*  \*  \*
      (2) the person intentionally commits the murder in the course of committing or attempting to commit ... robbery ... [.]
2. Tex.Code Crim.Proc.Ann. art. 37.071 was amended effective September 1, 1991. However, all references herein refer to the Code of Criminal Procedure in effect at the time of appellant's trial.

In his fifth point of error, appellant challenges the sufficiency of the evidence to support his conviction. Specifically, appellant contends that the trial court erred in overruling his motion for a directed verdict at the close of the State's case-in-chief, asserting that the State had failed to corroborate the accomplice witness testimony of Robert Brian Moore.

To resolve this point, we must first address the State's claim that appellant is procedurally barred from raising this point on appeal. Appellant moved for a directed verdict at the close of the State's case-in-chief and the motion was overruled. Appellant then presented defensive evidence. The State relies on *Hafdahl v. State*, 805 S.W.2d 396 (Tex.Cr.App.1990), to support the contention that, because appellant put on evidence after his motion for a directed verdict was overruled, appellant is procedurally barred from challenging the trial judge's decision overruling that motion. However, we disavowed the rule in *Hafdahl*, and its progenitors, in *Madden v. State*, 799 S.W.2d 683, 686 n. 3 (Tex.Cr.App.1990):

> In *Hafdahl v. State* ... the Court held that appellant *waived* his right to complain that the trial court erred in overruling his motion for instructed verdict by presenting defensive evidence after the State rested its case-in-chief. In so holding, the Court cited *Kuykendall v. State*, 609 S.W.2d 791 (Tex.Cr.App.1981) and *Shirley v. State*, 501 S.W.2d 635 (Tex.Cr.App.1973), which the *Kuykendall* opinion solely relied on for this waiver propo-

Tex.Code Crim.Proc.Ann. art. 37.071(b)(1) and (2) provides:
   (b) On conclusion of the presentation of the evidence, the court shall submit the following ... issues to the jury:
   (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
   (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society[.]

sition. Our research reveals that *Shirley* was decided on the basis of two prior opinions from this Court, *viz: Bellah v. State,* 415 S.W.2d 418 (Tex.Cr.App.1967), and *Davis v. State,* 440 S.W.2d 291 (Tex. Cr.App.1969), neither of which held that an appellant waives his right to complain of the trial judge's overruling of his motion for instructed verdict by presenting defensive evidence. On the contrary, *Bellah* and *Davis* both stand for the principle that an appellate court is not required to pass on the contention that the evidence was insufficient at the time the State rested its case-in-chief once the appellate court has determined, after considering *all* the evidence presented at trial by both the State and the defendant, the evidence is sufficient to sustain the conviction. Thus, the waiver language in *Hafdahl* is disavowed.

The harsh rule in *Hafdahl* was the result of a mistaken interpretation of prior case-law, not an evolution of legal principles. As we recognized in *Madden,* "[a] challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction." *Madden,* 799 S.W.2d at 686. Therefore, although originally appearing only in a footnote, we now adopt the foregoing language in *Madden* as the rule. *See, Kunkle v. State,* 852 S.W.2d 499, 504 (Tex.Cr.App.1993). Accordingly, we will consider the evidence presented at trial by both the State and appellant in determining whether there was sufficient evidence to corroborate the accomplice witness testimony of Robert Brian Moore.

Tex.Code Crim.Proc.Ann. art. 38.14, provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

We have interpreted article 38.14 as follows:

It is well settled ... that the corroborative evidence need not directly link the accused to the crime or be sufficient in itself to establish guilt. [Citations omitted.] The test to determine the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is inculpatory evidence which *tends to link* the accused with the commission of the offense. [Citations omitted.]

This same test is applied in determining the sufficiency of corroboration in capital cases. [Citations omitted.] ....

*Thompson v. State,* 691 S.W.2d 627, 631 (Tex.Cr.App.1984) (Emphasis in original.)

After eliminating from consideration the testimony of Robert Brian Moore, a review of the record reveals inculpatory evidence which tends to link appellant with the commission of the offense of capital murder. According to appellant's own testimony, he participated in the kidnapping and robbery of the decedent, holding the gun while the decedent showed Moore which key fit in the ignition of the decedent's car. Appellant testified that he and Moore drove the decedent north on I–35 from Austin to a roadside park. Appellant testified that he held the gun on the decedent while Moore tied-up the decedent and took his wedding band. Immediately afterward, either Moore or appellant fatally shot the decedent. Moore and appellant then drove to Fort Worth.

Appellant's own testimony, which showed his participation in the decedent's kidnapping and robbery and his presence at the murder scene, established that he was, at a minimum, a party to capital murder. In addition, the decedent's watch and wallet were recovered from appellant's person, which also tends to connect appellant with the robbery and murder of the decedent. Appellant's fifth point of error is overruled.

■ In his first point of error, Appellant contends the trial judge erred in sustaining the State's challenge for cause of veniremember Margaret Lehnart. Lehnart testified that she would need greater proof of

guilt than proof beyond a reasonable doubt before she could impose the death penalty:

> Lehnart: Well, I would have to be very firmly—I would say that I would have to be convinced perhaps beyond a reasonable doubt to no shadow of a doubt of the guilt of this particular individual. In order to favor the death penalty, I would want to be absolutely certain, because if the State makes a mistake, you can let a person out of prison but you can't bring back somebody that's executed, so I would want to be absolutely, firmly convinced that this is the guilty party and that this person is guilty of this.

> \* \* \* \* \* \*

> If I'm going to vote to take somebody else's life, I want to be very sure of it. You just can't bring back a life if you take it wrongfully.

> State: I understand that. What you are saying is you would require a higher burden than beyond a reasonable doubt?

> Lehnart: In a death situation, yes, I would.

We said in *Jacobs v. State*, 787 S.W.2d 397, 404 (Tex.Cr.App.1990):

> The State is entitled to have a prospective juror excluded for cause if the juror has a bias or prejudice against any phase of the law upon which the State is entitled to rely. If a prospective juror manifests an intention to hold the State to a stricter standard of proof than that of beyond a reasonable doubt, then that juror is subject to a challenge for cause under Article 35.16(b)(3), V.A.C.C.P. (Citations omitted.)

In the present case, Lehnart clearly expressed that she would require a stricter standard of proof than the beyond a reasonable doubt standard. Therefore, we find that the trial court did not err in sustaining the State's challenge for cause. Appellant's first point of error is overruled.

In his second and third points of error, appellant contends the trial court erred in overruling his *Batson* challenges to the State's peremptory strikes of two veniremembers, Jessie Mae Mathews and Helen Linued.[3] Both veniremembers were struck after the trial judge overruled the State's challenges for cause.

The State responds that appellant may not raise a *Batson* challenge because he is not a member of a cognizable racial group and Tex.Code Crim.Proc.Ann. art. 35.261(a) supports the State's argument:

> The court shall grant the motion of a defendant for dismissal of the array if the court determines that *the defendant is a member of an identifiable racial group*, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(Emphasis added.)

However, the Supreme Court held in *Powers v. Ohio*, 499 U.S. 400, ——, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1991), that under the Fourteenth Amendment, "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." Therefore, the race of a defendant is irrelevant to a *Batson* challenge.

---

**3.** Appellant's second and third points of error state:

The trial court erred by allowing the State to exercise a peremptory challenge to remove Panelist Jessie Mae Matthews from the jury because the State was systematically excluding persons from the jury on the basis of race.

The trial court erred by allowing the State to exercise a peremptory challenge to remove Panelist Helen Linued from the jury because the State was systematically excluding persons from the jury on the basis of race.

Just as it is not necessary under *Powers* to show that the defendant is a member of a cognizable racial group, it is also not necessary under art. 35.261(a) that the veniremember be of a particular racial group. A race-based peremptory strike offends both the United States Constitution and art. 35.-261(a).

■ The State next argues that appellant failed to make a prima facie case of racial discrimination. In *Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Cr.App. 1987), we held:

A prima facie case represents the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true. The party with the burden of proof must produce at least this much evidence to avoid a finding that the allegation is not true as a matter of law. Once produced, however, the allegation must be found true unless it is contradicted, impeached, or rebutted by other evidence.

In *Dewberry v. State*, 776 S.W.2d 589 (Tex. Cr.App.1989), we found a prima facie case had been established when the State peremptorily struck five of six black veniremembers. We noted in *Dewberry* that one way to demonstrate a pattern of discrimination is to show that the State "has used a disproportionate number of peremptories against" veniremembers who are minority members. *Dewberry*, 776 S.W.2d at 591. In the present case, a disproportionate number of the peremptory strikes exercised by the State, three of five, were used to strike minority veniremembers.[4] As "[t]he burden of establishing a prima facie case is not onerous," *Rousseau v. State*, 824 S.W.2d 579, 582 (Tex.Cr.App.1992), we find appellant established the prima facie case necessary under *Batson*.

■ We now examine the State's explanations for the strikes against Matthews and Linued. The State initially attempted to challenge Matthews for cause because "she couldn't think of any situation in which the non-triggerman should receive the death penalty." When the judge denied the challenge, the State peremptorily struck Matthews. Appellant then made his *Batson* motion, to which the judge responded, "I think [the State's] reason has been well explained."

In *Earhart v. State*, 823 S.W.2d 607, 624 (Tex.Cr.App.1991), we held:

The trial court implicitly found that the State offered race-neutral reasons for peremptorily striking veniremember Lang. This Court must accept that finding unless we determine that it is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707 (Tex.Cr.App.1989) (opinion on reh'g). Under the clearly erroneous standard, we are to accept the trial court's account of the evidence if it is plausible in light of the record viewed in its entirety. *Anderson v. Bessemer City*, 470 U.S. 564, 574–5, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Moreover, because a determination of purposeful discrimination usually depends on assessment of credibility, the content of the explanation and all other relevant surrounding facts and circumstances, the trial court determination is entitled to great deference. *Tennard v. State*, 802 S.W.2d 678 (Tex. Cr.App.1990).

In light of the foregoing standard, we find the trial judge's action in overruling appellant's *Batson* claim was not clearly erroneous. Appellant's second point of error is overruled.

■ The State initially challenged Linued for cause for the following reasons: One, she said she couldn't conceive of any situation where the non-triggerman-accomplice would receive the death penalty. Also, for the reason that she's a vacillating voir dire-man and according to *Clark versus State* found at 717 S.W. 2nd 910, a Texas Court of Criminal Appeals case of 1986, the Court said there that narrowing the facts of this case that when a juror said they would not vote

---

4. In addition to Linued and Mathews, veniremember Santiago Aguillon was peremptorily struck by the State. However, appellant does not raise a point of error challenging the trial court's denial of his *Batson* motion when Aguillon was struck. Therefore, we will assume that appellant was satisfied with the race-neutral explanation proffered for striking Aguillon.

yes to a special issue and then said they would, that would substantially impair the voir dire-man's performance of a juror and in that case should be properly challenged for cause and she was vacillating in this case, I thought and we challenge for cause on those two bases.

The State's challenge for cause was denied, and the State peremptorily struck Linued. Appellant made a *Batson* motion and said "although I do believe that the District Attorney has expressed his reasons." The judge overruled the motion. The trial judge's conclusion that the two reasons offered by the State for the peremptory strike were satisfactory race-neutral reasons was not clearly erroneous. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant contends that the trial judge erred in denying appellant's pre-trial motion to suppress evidence and overruling appellant's objection to the introduction of the same evidence at trial because the evidence was obtained by as the result of an illegal search and arrest. Appellant objects, specifically, to the introduction of decedent's watch and a wallet which were found on appellant's person. However, the watch and the wallet were seized *after* an arrest warrant had been issued and appellant had been formally arrested.

Appellant does *not* contest the validity of the warrant. Therefore, the record does not support appellant's contention that the seizure of the watch and wallet were the result of an illegal search and arrest. Appellant's fourth point of error is overruled.

In his sixth point of error, appellant contends that reversible error occurred when the State argued matters dealing with punishment during final argument at the guilt/innocence phase of the trial. The State's argument follows:

The State: First, it's an undeniable fact that that defendant sitting right there and sat in this stand right in front of your face, confessed to you that he's guilty of capital murder at a minimum, as a party. The defense attorney said I would harp on that. It's worth harping on, folks, because you sat here and

heard it with your own ears. I asked him and he said yes, I acted and abetted and assisted, so we know that as a minimum he's guilty of capital murder as a party because the words came from his mouth. Of course, he tried to talk you out of being found guilty of capital murder and being found guilty of only the lessor offense of aggravated robbery. That's his whole defense. This whole trial is about the sentence and not about guilt or innocence.

Appellant: Excuse me, your Honor, I'm going to object to that. That's improper argument and that's absolutely wrong, also.

The Court: I'll sustain that objection.

■ In order to preserve jury argument error for appellate review, the defendant must "(1) make an objection; (2) request an instruction to disregard; and (3) make a motion for a mistrial." *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Cr.App. 1984). In the instant case, after the trial judge sustained the objection, appellant did not ask for an instruction to disregard or move for a mistrial. It is well settled that when appellant has been given all the relief he requested at trial, there is nothing to complain of on appeal. "Appellant's objection was sustained. He did not ask that the jury be instructed to disregard the testimony, nor did he move for a mistrial. Appellant must obtain an adverse ruling in order to preserve a matter for review." *Nethery v. State*, 692 S.W.2d 686, 701 (Tex. Cr.App.1985). As no error was preserved, appellant's sixth point of error is overruled.

■ In his seventh and eighth points of error, appellant contends the trial judge erred in overruling appellant's objections, during the punishment phase, to the testimony of Deputy Charlie West and Texas Ranger Jim Ray. Both West and Ray testified that appellant showed no remorse for the killing of the decedent. Appellant objected during the testimony of West, saying:

Any evidence about how he acted to me is still a trait of character that is covered by Rule 405 which prohibits the introduction of that evidence unless the witness

was substantially familiar with the defendant prior to the date of the offense. I think clearly we're talking about a character trait.

This objection was renewed during similar testimony by Ray. However, appellant's arguments on appeal make no mention of Tex.R.Crim.Evid. 405 but instead complains of "testimony of a witness as to another person's state of mind." Appellant's brief at 35.

When the complaint on appeal differs from that made at trial, the error is waived. "An objection stating one legal basis may not be used to support a different legal theory on appeal." *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Cr.App.1990). This is so because the trial judge did not have an opportunity to rule on that legal theory; nor did the State have an opportunity to remove the objections or supply other testimony. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Cr.App.1977); and *Purtell v. State*, 761 S.W.2d 360, 365–6 (Tex.Cr.App. 1988). Therefore, "nothing is presented for appellate review." *Rezac*, 782 S.W.2d at 871. Appellant's seventh and eighth points of error are overruled.

██ In appellant's ninth point of error, appellant contends the trial judge erred in overruling appellant's objection to the testimony of Dr. James Grigson. Appellant alleges Grigson's testimony was based upon an improper hypothetical question. Appellant made the following objection to the State's hypothetical:

Excuse me, your Honor. Before he answers the question, I have an objection to interpose. We would object because first of all, they have assumed facts not in evidence, specifically, they said that Cook loaded the gun in Austin, Texas and I don't believe that was in the testimony anywhere. In fact, Bobby Moore admitted he loaded the gun. The hypothetical is also misleading in that it recites the aggravated assault conviction and the supposed details that led up to the aggravated assault were two separate incidences and they were obviously from the D.A.'s own testimony and evidence of one incident alone. In addition,

we would say that this is an improper question. He has not demonstrated that he has sufficient knowledge of the defendant's background to offer any opinion and we'll make our objection under Rule 703 of the Rules of Criminal Evidence, specifically, that this is not the type of testimony or evidence reasonably relied upon by experts in the particular field of Dr. Grigson, which is psychiatry.

Appellant's objection was overruled.

"The assumptions of the hypothetical must be based on facts within the personal knowledge of the witness, or facts assumed from common or judicial knowledge, or facts supported by evidence." *Pyles v. State*, 755 S.W.2d 98, 118 (Tex.Cr.App. 1988), citing *Holloway v. State*, 613 S.W.2d 497 (Tex.Cr.App.1981). An examination of the record reveals that the statements to which appellant objects, while they are somewhat ambiguous, are supported by the record.

With regard to who loaded the gun, the hypothetical contained the following statement: "that Anthony Quinn Cook and Robert Moore drank beer, loaded the gun in a bar in Austin, Texas and went looking for a car to steal." This language, while imprecise, does not point specifically to either actor as the one who loaded the gun, and is therefore not inconsistent with Moore's testimony that he loaded the gun at appellant's direction.

Appellant also claims that the State described one incident of aggravated assault as though it was two separate incidents. The State described the incident once and then related the way appellant described that same incident to a police officer. While this dual description could have caused the jury to think that the State was referring to two separate incidents, we find that this possibility is insufficient to warrant a finding that the trial judge erred in overruling appellant's objection.

Furthermore, appellant now complains of inconsistencies in addition to those raised at trial. However, appellant is limited on appeal to raising those inconsistencies urged at trial. *See, Rezac v. State*, 782 S.W.2d 869 (Tex.Cr.App.1990); *Purtell v.*

*State,* 761 S.W.2d 360 (Tex.Cr.App.1988); and *Zillender v. State,* 557 S.W.2d 515 (Tex.Cr.App.1977).

Appellant also complains that Grigson has not demonstrated sufficient knowledge of appellant's background to offer an opinion on appellant's future dangerousness. The United States Supreme Court held that it was permissible for an expert to testify based upon a hypothetical question in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). Moreover, "It is settled in this State that psychiatric expert testimony of a defendant's future dangerousness may be based solely upon hypothetical questions, without the benefit of an examination of a defendant." *Pyles v. State,* 755 S.W.2d 98, 118 (Tex.Cr.App. 1988), citing *Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Cr.App.1981); *Smith v. State,* 683 S.W.2d 393 (Tex.Cr.App.1984); and *Holloway v. State,* 691 S.W.2d 608 (Tex.Cr.App.1984) (on remand).

Finally, appellant argues that hypothetical questions are not the type of testimony or evidence relied upon by experts in the field of psychiatry under Tex.R.Crim.Evid. 703. This issue has been resolved against appellant. *See, Barefoot v. Estelle,* 463 U.S. at 896–897, 103 S.Ct. at 3396–3397; *and Nethery v. State,* 692 S.W.2d 686, 709 (Tex.Cr.App.1985). Appellant's ninth point of error is overruled.

■ In his tenth point of error, appellant contends that the trial judge erred in excluding the penitentiary records of co-defendant Robert Brian Moore. At the punishment phase, appellant attempted to introduce Moore's complete penitentiary records, "including incident reports and violation reports," during the punishment phase of the trial.[5] In support of the admission of the records appellant stated:

> We're not sure how the jury decided— and we don't know at this point whether [appellant] has been convicted as a party to this offense or as a principle (sic). If he's convicted as a party, I would say this is relevant evidence for them to consider and that's the purpose of offering it at this time.

In other words, appellant asserted that if he had been convicted under the law of parties,[6] Moore's penitentiary records might help persuade the jury that Moore, rather than appellant, had been the trigger-man, which might result in a sentence of life rather than death for appellant. For the following reasons, we find that Moore's penitentiary records were irrelevant to the determination of appellant's individual culpability.

We held in *Green v. State,* 682 S.W.2d 271, 287 (Tex.Cr.App.1984), that "[w]hile the law of parties can apply to *convict* an accused of capital murder, the death penalty may be imposed only by examination of the mitigating and aggravating circumstances concerning the *individual* defendant." (Emphasis in original.) In the case at bar, the charge to the jury at the punishment phase included an appropriate, prophylactic instruction:

**5.** We pause to note that Moore had already admitted to his prior criminal convictions during his testimony at the guilt/innocence phase of the trial.

**6.** This is a reference to § 7.02 of the Texas Penal Code:

> § 7.02 Criminal Responsibility for Conduct of Another
>
> (a) A person is criminally responsible for an offense committed by the conduct of another if:
>
> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) acting with intent to promote or assist the commission of the offense, he solicits,

> encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.
>
> (b) If, in the *attempt to carry out a conspiracy* to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

You are further instructed that in determining each of these special issues you may take into consideration all of the evidence submitted to you in the full trial of the case wherein you are called upon to determine the guilt or innocence of the Defendant, and all of the evidence admitted before you in the second part of the trial wherein you are called upon to determine the answers to Special Issues hereby submitted to you; *however, you are instructed that only the conduct of the Defendant, Anthony Quinn Cook, may be considered at the punishment phase of this trial. The instructions pertaining to the law of parties that were given to you at the guilt stage of the trial may not be considered by you in determining the punishment in this case. In determining the proper punishment for the Defendant, Anthony Quinn Cook, you shall consider only his actions, intentions, and expectations, and not those of any other party who may have been involved in the commission of the offense.*

(Emphasis added.) This instruction helped to ensure that only appellant's own conduct was considered by the jury in answering the punishment issues. The punishment issues themselves "are tailored to guide a jury in examining the culpability and conduct of the individual defendant, and indeed must do so in order to comply with the guidelines set forth by the United States Supreme Court." *Green* at 286.

Moreover, relevant mitigating evidence is "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death (footnote omitted)." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–2965, 57 L.Ed.2d 973 (1978). Evidence of Moore's criminal record does not fall within any of these categories. We held in *Evans v. State*, 656 S.W.2d 65, 67 (Tex.Cr.App.1983):

> We do not see how the conviction and punishment of a *co-defendant* could mitigate *appellant's* culpability in the crime. Each defendant should be judged by his *own* conduct and participation and by his *own* circumstances. If evidence of a co-defendant's convictions and punishment were admissible, why not the convictions in all other capital murders and the punishment in those cases? We do not believe this is what the right to present mitigating circumstances to the jury was meant to include. The law contemplates evidence personal to the accused, not comparisons with the convictions and punishments of other defendants.

(Emphasis in original.) Therefore, evidence of Moore's criminal record was irrelevant and appellant's tenth point of error is overruled.

In his eleventh point of error, appellant contends the trial judge erred in overruling appellant's objection to the State's use of a chart during the State's closing argument at the punishment phase of the trial. Appellant contends the use of the chart amounted to an improper comment on the parole laws. The chart showed the dates of appellant's past offenses and convictions, sentences received, and parole dates. The State pointed out that the present offense occurred thirteen days after the last time appellant was paroled, and that all of appellant's offenses occurred within a period of nine years.

There are four permissible areas of prosecutorial jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; and (4) plea for law enforcement. *Sterling v. State*, 830 S.W.2d 114, 121 (Tex.Cr.App.1992). The defendant in *Stephen v. State*, 677 S.W.2d 42, 45 (Tex.Cr.App.1984), made an objection to an argument similar to the State's argument in the instant case. We found that "the prosecutor was merely arguing that the appellant deserved a long sentence." *Id.* In that case, as in this one:

> ... the prosecutor never referred to the parole laws and we cannot say from the record that he crossed the line into the forbidden area of jury argument on parole laws. We find that his argument was a proper summation of evidence and a plea for law enforcement.

*Id.* Therefore, appellant's eleventh point of error is overruled.

■ In his twelfth point of error, appellant contends the trial judge erred in overruling appellant's objection to arguing matters outside the record and speculating on future possible acts by appellant. At the punishment phase of the trial, the State's final argument began with a litany of appellant's past criminal acts, and concluded as follows:

> The State: Burglary, theft from a person, murder, robbery, kidnapping, drugs and violence and violence and drugs.
>
> How many wives are going to have to shed the tears that [the decedent's wife] did? How many people are going to be kidnapped at knifepoint or beaten over the head with a tire tool?
>
> Appellant: Your Honor, excuse me. That's improper. That's not in evidence. It's totally outside of the scope of the evidence. It's improper argument talking about how many future possible acts.
>
> The Court: I'll overrule the objection.
>
> The State: How many innocent victims have to be beaten, robbed, kidnapped and murdered before we as a society get the message? . The message that Dr. Grigson tried to testify about. The man is a sociopath. He's going to kill people. He's dangerous. How many times will it take before that man is forever stopped?

The State's rhetorical question, "How many innocent victims have to be beaten, robbed, kidnapped and murdered before we as a society get the message?" suggests a generalized plea for law enforcement. However, the gist of the State's argument seems to be that appellant will kill or otherwise harm somebody again unless he is "forever stopped." Since Texas does not offer the sentence of life without parole, presumably the only sentence that could "forever stop" a defendant with any certainty is the death penalty. We said in *Sterling* that "[i]t reasonably could be deduced from the substantial evidence of appellant's propensity for violence that appellant would commit acts of future violence and constitute a continuing threat, *even to prison "society"*, in the event of a life sentence." *Sterling*, 830 S.W.2d at 121. (Emphasis in original.) Furthermore, "[r]hetorical questions, based upon a reasonable deduction from the evidence, are generally within the proper scope of jury argument." *Kinnamon v. State*, 791 S.W.2d 84, 90 (Tex.Cr.App.1990).

In *Starvaggi v. State*, 593 S.W.2d 323, 328 (Tex.Cr.App.1979), a capital murder in which the death penalty was assessed, the State argued at the punishment phase: "I just say this, that I hope he doesn't come knocking on one of your doors at eight o'clock one evening." We concluded the argument was both a proper plea for law enforcement and a reasonable deduction from the evidence. Similarly, we hold in the present case that the State's argument that appellant will kill or harm somebody again unless he is "forever stopped" constituted a reasonable deduction from the evidence of appellant's violent past history as well as a proper plea for law enforcement. Appellant's twelfth point of error is overruled.

The judgment of the trial court is affirmed.

MILLER, J., concurs in the result reached in point of error eleven and otherwise joins the opinion.

CAMPBELL, J., concurs in the result reached in point of error five and otherwise joins the opinion.

MALONEY, J., concurs in the result reached in points of error five and eleven and otherwise joins the opinion.

CLINTON, J., dissents.