In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-569 CR


____________________



DAVID SMOUSE, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 00-07-04547-CR






OPINION


 A jury found appellant guilty of having committed the state jail felony offense of
Theft. See Tex. Pen. Code Ann. § 31.03(a), (e)(4)(A) (Vernon Supp. 2002). The trial
court sentenced appellant to confinement for two years in the Texas Department of
Criminal Justice - Institutional Division, and assessed a fine of $2,000. Appellant was also
ordered to pay restitution in the amount of $2,700. Imposition of appellant's incarceration
was suspended by the trial court and community supervision assessed for a period of five
years. Appellant brings to us three issues for consideration, viz: 


 It was erroneous for the trial Judge to overrule Appellant's Motion for
an Instructed Verdict at the close of the Governments [sic] case when
the evidence used to establish the value of the property was so
obviously weak [as] to be factually insufficient to support the
conviction.

 The jury's finding of guilty as indicted for theft of property of $1500
of [sic] more is based on mere speculation and is so obviously weak
[as] to be factually insufficient to support a state jail felony
conviction. 

 It was erroneous for the Judge to deny Appellants [sic] Motion for a
New Trial when the Government's evidence as to the value of the
property was so obviously weak [as] to be factually insufficient to
support a state jail felony conviction for theft.



 We quickly dispose of appellate issue one at the outset. The law is well settled that
a challenge on appeal to the denial of a motion for instructed or directed verdict is a
challenge to the legal sufficiency of the evidence, not to the factual sufficiency of the
evidence. See Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing 
Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)). See also Noyola v. State,
25 S.W.3d 18, 19 (Tex. App.--El Paso 1999, no pet.). This is as it should be for in a
factual sufficiency review the reviewing court considers all of the record evidence in a
neutral light - - evidence both for and against a finding. See King v. State, 29 S.W.3d
556, 563 (Tex. Crim. App. 2000). A directed verdict for factual insufficiency at the close
of the State's case-in-chief would seem, therefore, to be procedurally improper. We
overrule appellate issue one. 

 An abbreviated recitation of the facts is all that is necessary at this point. The
State's theory of the case was simple. During the period from June 1998 through
November 1998, while appellant was employed as the manager of a gas station and
convenience store owned by Tetco, Inc., appellant appropriated cash from the store's
receipts in a variety of incremental amounts. Said losses were calculated by Tetco to total
between $2,000 and $3,500. When eventually confronted with these facts by Parus
Dudley, the security officer for the store's parent company in November 1998, appellant
executed a written statement in which, according to Dudley, appellant agreed that the
amount of $2,700 had been taken. This written statement by appellant was not admitted
into evidence at trial because the trial court granted appellant's previously filed motion to
suppress said statement. In fact, neither the State nor appellant introduced any
documentary evidence of amounts of shortages or overages in the daily deposits made by
appellant in his capacity as store manager. 

 Appellant was the lone witness for the defense. The gist of appellant's explanation
was that any shortages or "unauthorized draws" that may have been reflected in the
company's records were all authorized by appellant's immediate supervisor, Ken
Davidson. According to appellant, Davidson permitted him [appellant] to give cash
advances to various employees, and then when the employee was paid at the end of the
week, the employee would pay the "loan" back. Appellant stated that records of the
"loans" were kept, but as each "loan" was repaid, the written notation was destroyed. 
Appellant admitted to having provided Parus Dudley with a written statement in November
of 1998, but stated he [appellant] did not tell Dudley about Davidson's authorization of the
"loans" at Davidson's request as such "loans" were in direct violation of Tetco company
policy. (1) 

 Under the factual sufficiency standard of review, the reviewing court asks whether
a neutral review of all the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. King, 29 S.W.3d at 563 (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000)) (Court of Criminal Appeals adopted the complete civil factual sufficiency
formulation.). In the instant case, we see the factual sufficiency analysis as focusing
mainly on the second prong - - essentially involving a "balancing scale." See Goodman
v. State, No. 0120-00, 2001 WL 1472597, at *2 (Tex. Crim. App. Nov. 21, 2001) (not
yet reported). The Court in Goodman analogized the "balancing scale" review for factual
sufficiency in the following manner:

 Here, there is evidence on both sides of the question. Some evidence
supports a positive inference, and some evidence supports a negative
inference. For example, suppose a modern-day Cretan Liar (2) testifies: "I saw
the defendant put the baggie of cocaine down on the sidewalk." Although
the Cretan Liar has five prior perjury convictions, his testimony is
nonetheless legally sufficient to prove that the defendant possessed the
baggie. Direct evidence of "X" fact is always legally sufficient to support
a finding of "X" fact. See Calvert ["No Evidence" and "Insufficient
Evidence" points of Error, 38 Texas L. Rev. 361 (1960)] at 363. The
Cretan Liar's testimony, standing alone, is also factually sufficient to support
the element of possession. If the jury believes him (and it is entitled to do
so under either a legal or factual sufficiency review), then the Cretan Liar's
testimony conclusively proves the point. (footnote omitted) Now, suppose
that the defendant calls a dozen boy scouts, who uniformly testify that they
definitely saw the baggie lying on the sidewalk before the defendant came
along and sat down. Now we have the Cretan Liar's testimony (which the
jury was entitled to believe and actually did believe) set against the testimony
of twelve boy scouts (whose testimony the jury was entitled to reject and
whose testimony, for whatever reason, it did reject). Clearly, the jury's
finding that the defendant possessed the baggie of cocaine is against the great
weight and preponderance of the evidence. The Cretan Liar, with multiple
perjury convictions, versus twelve boy scouts? (footnote omitted) Given this
state of the evidence, the jury's verdict is "clearly wrong" and "manifestly
unjust." A reviewing court can only attribute the verdict to bias,
irrationality, or some other peculiarity. 


Id. (emphasis in original). It would appear that a proper factual sufficiency review will
encompass a quantitative analysis of the evidence (total amount of evidence presented by
each party on a particular fact at issue) as well as a qualitative analysis of the evidence. 
Additionally, as part of the qualitative analysis of the evidence, the reviewing court is to
apparently make an independent assessment of any objective indicators of credibility for
each fact-witness called to testify. As the Court noted in Goodman, "[T]he next practical
issue is how many boy scouts does it take to make a verdict based on the testimony [of]
a multiple perjurer 'clearly wrong' and 'manifestly unjust'? . . . At some point, the
reviewing court necessarily exercises its subjective judgment." Id. at *2 n.5. 

 In the instant case, the State's two witnesses, Dudley and Davidson, both testified
that removing cash from the daily receipts by any employee, including the manager, was
a violation of Tetco, Inc. company policies, and neither man gave appellant permission to
do such a thing for any purpose. Furthermore, Dudley testified that based upon his
investigation, none of the shortages had ever been paid back, and that appellant stated
during the interview in November of 1998, that he [appellant] liked to gamble and took the
money to Louisiana to use it there. Although appellant took the stand in his own defense
and testified that all of the "loans" or "unauthorized draws" had been repaid, on cross-examination, the State took appellant through thirteen dates beginning on June 26, 1998,
and ending on November 2, 1998, with each date representing a reported shortage of
receipts from the store. Appellant testified that on each of those dates, any "loan,"
"draw," or shortage would have been reported to Ken Davidson by appellant. When the
shortages of those thirteen dates are added together, the total amount missing comes to
$2,000. In rebuttal, Ken Davidson reiterated the fact that he never authorized any "draws"
from the store's cash for loans to other employees or to appellant himself. 

 From all of the record evidence before us, we find factually sufficient evidence in
support of each element of the offense of theft in an aggregated amount of at least $1,500
but less than $20,000. Furthermore, we also find that the proof of each of the essential
elements of the theft charge was not so contrary to the great weight and preponderance of
the record evidence as to be clearly wrong or manifestly unjust. Additionally, there was
no trial court error in denying appellant's motion for new trial because of "obviously
weak" evidence as to value of the property stolen. There is evidence in the record
supporting a total amount missing of either $2,000 or $2,500. Each amount is at least
$1,500 but less than $20,000. As we have noted before, simply because the defendant
presents a different factual version of the events does not render the evidence insufficient. 
Thompson v. State, 12 S.W.3d 915, 920 (Tex. App.--Beaumont 2000, pet. ref'd). We
overrule appellate issues two and three. The judgment and the sentence of the trial court
are affirmed.

 AFFIRMED.


 _______________________________

 RONALD L. WALKER

 Chief Justice



Submitted on March 6, 2002

Opinion Delivered March 20, 2002

Do Not Publish 


Before Walker, C.J., Burgess and Gaultney, JJ.
1. Although appellant did not orally inform Dudley of Davidson's alleged
authorization of the "loans," appellant did include this "fact" in his written statement to
Dudley.
2. The Court provided the following footnote at this point: "History credits
Epimenides, a 6th century B.C. philosopher, for introducing the semantical paradox known
as the Cretan Liar. Epimenides, himself a Cretan, reputedly asserted, 'All Cretans are
liars.' If all Cretans are indeed liars, as Epimenides says, then Epimenides himself must
be lying when he states that all Cretans are liars."