In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00145-CR


______________________________




JOHNNY EARL SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 20,993




 




Before Morriss, C.J., Ross and Cornelius,* JJ.


Opinion by Justice Cornelius



______________________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Johnny Earl Smith appeals his conviction in the district court of Hunt County for the
unauthorized use of a vehicle in violation of Section 31.07 of the Texas Penal Code. See Tex. Pen.
Code Ann. § 31.07 (Vernon 2003). A jury convicted Smith and assessed his punishment at five
years' imprisonment. (1) Smith contends the trial court improperly denied his motion for instructed
verdict made when the State rested its case-in-chief. Specifically, he complains the State failed to
prove that the truck he was driving at the time of his arrest was the same truck that had been taken
from the person the indictment alleges as the owner, James Paul Joseph. We overrule the contention
and affirm the judgment.

 A challenge of the trial court's denial of a motion for instructed verdict is, in effect, a
challenge to the legal sufficiency of the evidence to support the conviction. See Williams v. State,
937 S.W.2d 479, 482 (Tex. Crim. App. 1996); Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App.
1993). In our review, we consider all the evidence presented at trial, both from the State and the
defense, in the light most favorable to the verdict. Cook v. State, 858 S.W.2d at 470; Bellah v. State,
415 S.W.2d 418, 420 (Tex. Crim. App. 1967). That is, our review of the sufficiency of the evidence
is not limited to the evidence presented before an appellant's motion for instructed verdict is made
at the end of the State's case-in-chief. See Bellah v. State, 415 S.W.2d at 420. If the evidence is
sufficient to sustain the conviction, the trial court did not err by overruling the motion for instructed
verdict, and we need not determine whether the evidence was insufficient at the time the motion was
made. Cook v. State, 858 S.W.2d at 470; Harvey v. State, 847 S.W.2d 365, 366 (Tex.
App.-Texarkana 1993, no pet.). So, our inquiry is whether a rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Mathis v. State, 67 S.W.3d 918,
922 (Tex. Crim. App. 2002).

 The evidence at trial, viewed in the light most favorable to the verdict, established the
following sequence of events. On January 7, 2002, Smith visited Discount Auto in Quinlan, Hunt
County, Texas. James Joseph recognized Smith as someone with whom the company had dealt
previously, and allowed Smith to test drive a Ford pickup truck. The pickup was a 1994 model,
black, with an extended cab, flared sides, and pinstriping. Joseph informed Smith that he was
allowed to drive the truck three miles in any direction away from the car dealership. After Smith did
not return for some time, Joseph became concerned and contacted the Hunt County sheriff's
dispatcher, who advised Joseph to wait longer to see if Smith would return. On January 9, Smith
still had not returned, and the Quinlan chief of police came to the dealership and, on learning of the
incident, contacted the Hunt County Sheriff's Office concerning the matter. Hunt County sent
Deputy Henry Grandfield to Discount Auto, where he took the report at approximately 9:30 that
morning. In his report, Grandfield noted that Joseph described the truck as a 1994 black Ford F-150
pickup truck with an extended cab, tinted windows, Texas license plate number KR0284, and vehicle
identification number ("VIN") 1FTEX15NIRKB60966. He described the man who had taken the
vehicle as a man with salt-and pepper-colored hair, in his late 40s to early 50s, approximately six feet
one to six feet four inches tall, and weighing approximately 160 pounds. 

 Approximately four hours later and twenty-five miles away from Quinlan, Grandfield, who
was about to finish his routine patrol in Greenville, saw what he believed to be the truck that Joseph
had reported as stolen. He began to follow Smith, who shortly thereafter accelerated and began
passing quickly through the fairly heavy traffic. Grandfield turned on his lights and siren, and
followed Smith, whose driving had become increasingly dangerous. Grandfield testified that at
times speeds during the three-mile chase reached 70-80 miles per hour through town and that Smith
disregarded traffic signs and signals throughout the pursuit. Finally, Smith drove through a grassy
field and onto a parking lot, where he tried to pass between two parked cars but failed, crashing into
one. Grandfield then arrested the driver, who verbally identified himself as Johnny Earl Smith. 

 Grandfield made arrangements to have the vehicle impounded and inventoried. James
Frazier of Morgan Towing arrived to assist Grandfield. Because the front portion of the truck was
now positioned on the hood of a parked car, Frazier first removed the car from underneath the truck. 
He then entered the truck to prepare it for tow, stepped on a hard object in the floorboard, and,
without disturbing the object, alerted Grandfield to the long object wrapped in green cloth. 
Grandfield unwrapped the object, which was a sawed-off shotgun. 

 At the end of the State's case-in-chief, Smith moved for a directed verdict, and the trial court
denied the motion. During the State's rebuttal, Grandfield testified that the truck Smith wrecked and
the truck reported stolen both had the same Texas license plate number, KR0284, and VIN number,
1FTEX15NIRKB60966. 

 A person commits the offense of unauthorized use of a motor vehicle when "he intentionally
or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective
consent of the owner." Tex. Pen. Code Ann. § 31.07. Viewing the evidence in the light most
favorable to Smith's guilty verdict, we conclude that any rational trier of fact could have found
beyond a reasonable doubt the essential elements of unauthorized use of a vehicle. Smith challenges
the State's evidence as to only one element of the offense. He contends the State did not provide
sufficient evidence that the truck he was driving at the time of the chase and arrest was the truck that
was taken from Joseph at Discount Auto. We disagree. 

 There have been cases where complaints similar to Smith's have successfully challenged the
State's evidence. We find one of those instances in Winn v. State, 828 S.W.2d 284, 285-86 (Tex.
App.-Houston [14th Dist.] 1992, no pet.). Winn moved for an instructed verdict when the State
failed to present any evidence of the license plate numbers or the vehicle identification numbers from
the van that was stolen and the van he was driving. Id. at 286. The scant evidence that the State did
offer to connect the two vehicles was contradictory. Id. The complainant, who never identified the
impounded vehicle that the police seized, testified that her van was blue and grayish in color. Police
described the van that Winn was driving as blue and brown. The appellate court held that, on this
evidence, no rational trier of fact could have found all the elements of the offense beyond a
reasonable doubt and, thus, the trial court erred in denying Winn's motion for an instructed verdict. 
Id.

 Likewise, in Hooper, when the State proved only that the victim's car and the car driven by
the appellant were both Buick Regals, the court should have granted an instructed verdict. Hooper
v. State, 788 S.W.2d 24, 25 (Tex. App.-Houston [1st Dist.] 1987, no pet.). Additionally, the two
cars were different colors and had different license plate numbers, and the owner of the stolen Buick
Regal even testified that police had returned his vehicle to him before the defendant was arrested. 
Id. at 25-26. Because there was insufficient evidence that the vehicle the defendant was driving was
the same vehicle that was stolen, the court reversed the conviction. Id. at 26.

 The evidence in our case is much stronger than the evidence in either Winn or Hooper. We
find our case more closely analogous to Fisher v. State, 829 S.W.2d 403 (Tex. App.-Fort Worth
1992, pet. ref'd). In that case, Snider, the complainant, identified a photograph of a Camaro
automobile as being the same vehicle that was stolen from his dealership and the same vehicle that
authorities returned to him. Id. at 405. An examination of that photograph reveals that the car
Snider identified as the vehicle that was stolen bore the Texas license plate number ZEW479, the
same license plate number as was on the blue Camaro that the defendant was driving. The court
concluded that the trial court's denial of the defendant's motion for instructed verdict was proper
because the jury could have reasonably found that the vehicle the defendant was driving and the
vehicle reported stolen were the same vehicle since the year, make, model, paint color, license plate
number, and VIN were the same. See id.

 Another appellant convicted of unauthorized use of a vehicle challenged the sufficiency of
the State's evidence to prove that the car he was driving was the same car owned by the complainant. 
Lyles v. State, 582 S.W.2d 138, 142 (Tex. Crim. App. [Panel Op.] 1979). Before Lyles operated the
vehicle, he had ripped out some wires from underneath the dashboard. Id. The complainant testified
that, when he recovered his car, it had the same damage to the wiring underneath the dashboard. The
court noted that the evidence linking the two 1969 Plymouths was not developed as well as it could
and should have been, but held that the State's circumstantial evidence was sufficient to show that
the vehicles were one and the same. Id. at 143. 

 Here, Joseph testified that the stolen truck was a 1994 black Ford pickup truck with flared
sides, an extended cab, and pinstriping that was "like a red and silver." Grandfield testified that he
received a report from Joseph regarding a stolen 1994 Ford F-150 extended cab with tinted windows
and one-inch purple pinstriping and that later he saw a truck with tinted windows and purple
pinstriping.

 Additionally, the State's rebuttal case included testimony showing that the license plate
number and the VIN on the truck that Smith was driving are the same as for the truck that Joseph
reported stolen. So, while Smith contends that the State failed to produce evidence as to the license
plate or VIN of the truck, the record clearly indicates the contrary. While the State may not have
presented this evidence before Smith's motion for directed verdict, we review all evidence presented
at trial to determine whether the evidence is legally sufficient to support the conviction. Smith points
to the discrepancy in the color of the pinstriping on the truck in an attempt to bring his case within
the reasoning of Winn. The testimony we have here regarding the matching license plate number and
VIN, however, establishes the solid connection between the vehicle driven and the one stolen that
was absent in Winn. Having heard this evidence, a rational trier of fact could have reasonably
concluded that the truck Smith crashed was the same truck that Joseph reported stolen.

 We affirm the judgment.


 William J. Cornelius*

 Justice


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: February 13, 2003

Date Decided: May 22, 2003


Publish
1. The offense of unauthorized use of a vehicle is a state-jail felony. However, because Smith
used  a  deadly  weapon  and  there  were  enhancements  at  punishment,  the  offense  became  a
third-degree felony with a punishment range of two to ten years. 



R2">


CONCURRING OPINION

 Law enforcement officers may stop and briefly detain persons suspected of criminal activity
on less information than is constitutionally required for probable cause to arrest. Nevertheless, even
a temporary detention of this kind is not permissible unless the circumstances on which the officers
rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon
will be engaged in criminal activity. Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)
(citing Crockett v. State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). 

 To justify an investigative detention, an officer must have reasonable suspicion, based on
specific, articulable facts that, in light of the officer's experience and general knowledge, lead the
officer to a reasonable conclusion that criminal activity is underway and that the detained person is
connected with the activity. Perez v. State, 818 S.W.2d 512, 516 (Tex. App.--Houston [1st Dist.]
1991, no pet.).

 The line drawn between reasonable and unreasonable detention has evolved. In Davis, the
Texas Court of Criminal Appeals found that the facts did not support a conclusion that the defendant
was engaged in or about to be engaged in criminal activity even though the evidence showed alleged
inconsistent statements by occupants of the vehicle, the passenger had a drug conviction, the vehicle
was not registered in the driver's name, and the driver did not appear to the officer to be on a
business trip. After the defendant refused to consent, the drug dog was summoned and the vehicle,
but not the driver, was detained. The Texas Court of Criminal Appeals held that the court of appeals
erred in determining that the detention and search were justified. Davis, 947 S.W.2d at 241-42. 

 Very recently, the Texas Court of Criminal Appeals found a twenty-five-minute detention
and ensuing search were reasonable after the defendant refused to consent to a search and a drug dog
was then obtained. The court found facts supporting that detention included two Florida "drug
convoy" cars, diversionary tactics by one of the drivers, overdue rental car, and inconsistent stories. 
Madden v. State, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007). 

 Based on the most recent opinions from the Texas Court of Criminal Appeals, I agree that
the facts here are sufficient to justify a finding that the detention was permissible. 

 The question here is what articulable facts support an officer's reasonable suspicion and
conclusion that Love was involved in or connected to criminal conduct? 

 First, we must remember that this detention occurred after Love specifically invoked his
Fourth Amendment right against an unreasonable search by refusing to consent to the search.

 The majority opinion cites seven reasons why the officer's suspicions were aroused, seeming
to give equal credence to each. I think we should acknowledge that some of these facts lend
considerably less support than others that Love was involved in unusual activity related to crime. 

 1. Highway 59 is a major drug artery. I would dare to say that a comprehensive study of the
appellate opinions in Texas would demonstrate that every interstate or United States highway in
Texas is considered a major drug corridor. I find this fact lends little, if any, credence to a
conclusion that a particular individual who is traveling on a major highway is in possession of drugs. 
It is also true that all persons who possess drugs on a highway are driving or traveling in a vehicle,
but I doubt that anyone would seriously think that merely because one is driving a vehicle he or she
is to be suspected of possessing drugs. Likewise, I do not think that merely driving a vehicle on a
major highway, which is done by thousands of law-abiding people every day, contributes to a
reasonable suspicion that the driver is a drug courier. 

 2. More nervous than normal. Almost every person who sees flashing lights in the rearview
mirror and realizes that a police officer is about to detain him or her becomes somewhat nervous. 
How nervous do you have to be to exceed that normally expected? Some people by nature are more
nervous than others and may begin crying when receiving a speeding ticket. Once again, this appears
to be a fact that has little, if any, relevance to a reasonable conclusion that one is involved in crime
(generally drug possession). In a recent case, the Texas Court of Criminal Appeals labeled this
purported nervousness as "lagniappe--icing-on-the-cake--to the determination of reasonable
suspicion." Madden, 242 S.W.3d at 517. 

 3. and 4. Information about his destination--failure to drive toward Shreveport. The officer
testified that Love told him he was driving to Shreveport, Louisiana, and then later stated he was
going to Monroe. If he intended to drive to Shreveport, he had driven past the interstate highway
leading to Shreveport. This could indicate to a police officer that Love was attempting to deceive
the officer. 

 5. Driving a rental vehicle. The vehicle was properly rented to Love. Apparently, it is
common for those delivering drugs to use a rented vehicle. However, this too, standing alone, would
be a rather weak indicator of criminal conduct. 

 6. Volume of luggage. The officer thought the amount of luggage was excessive for a two-day trip. Again, this is a weak connection to possible criminal activity. Speaking from personal
experience, I find that every weekend trip my wife and I take involves an excessive amount of
luggage. 

 7. Love had two felony drug convictions. When asked by the officer, Love admitted only
to a conviction for a minor drug offense. This fact carries significant weight when we are
considering what a police officer would be reasonably suspicious of based on his or her experience
and general knowledge. While prior felony convictions are not admissible evidence to prove a
defendant is guilty of the present offense, it cannot be denied that, when a police officer encounters
a person in these circumstances who has previously been found guilty twice of a drug offense, it is
not unreasonable for the officer to have a suspicion of drug possession. Additionally, here, Love
attempted to deceive the officer and minimize his prior drug charges. I believe that the facts that
Love (a) was driving a rental vehicle, (b) gave inconsistent information about his destination, and
(c) had failed to take the highway leading him to that destination become more relevant when
juxtaposed with the fact that he had two prior drug-related convictions. When these four facts are
combined, I think it is reasonable for an officer to have a suspicion, based on objective facts, that
Love was involved in criminal activity. I do not believe that the facts that he (1) was traveling on
Highway 59, (2) was nervous, and (3) had several items of luggage add any strength to the basis for
such a reasonable conclusion. 

 I concur with the opinion of the majority in affirming the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: March 11, 2008

Date Decided: April 4, 2008


Publish