Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

## MEMORANDUM OPINION

No. 04-08-00064-CR

Emanuel **FONZIE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-7974A
Honorable Catherine Torres Stahl, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Sandee Bryan Marion, Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  February 11, 2009

AFFIRMED

Emanuel Fonzie appeals his conviction for capital murder.  In his sole issue on appeal, Fonzie

contends  the trial court erred in denying his motion for directed verdict because the State failed to

corroborate Jeremy Farr's accomplice-witness testimony. We affirm the trial court's judgment.

**BACKGROUND**

During the fall of 2000, Emanuel Fonzie invited his childhood friend, Jeremy Farr, to San Antonio and offered Farr a $50,000 job. After Farr arrived in San Antonio, Fonzie told Farr that his girlfriend, Theresa Tolliver, was in the process of divorcing her husband, Derrick Tolliver. Theresa and Fonzie asked Farr to kill Derrick before the divorce became final so Theresa would receive $200,000 from Derrick's life insurance policy. Fonzie told Farr he would pay Farr $50,000 from the insurance proceeds.

On the day of the murder, Fonzie, Theresa, Theresa's two children, and Farr went to Derrick's house under the pretext of picking up clothes for Theresa's children. While at the house, Fonzie, Theresa, and Farr discussed their plan to kill Derrick. The three individuals planned to unlock a window that Farr would later use to enter the house. The group also decided that Fonzie and Farr would park Theresa's 1993 teal Oldsmobile in some weeds by the street behind the backyard fence, climb through a hole in the backyard fence, and Farr would enter the house through the unlocked window, hide, and wait for Derrick. Fonzie told Farr he would supply Farr with a gun, and then Theresa and Fonzie showed Farr where he could wait for Derrick. After working out their plan, either Theresa or Fonzie unlocked a window, and the group, including Theresa's children, left Derrick's home.

Later that night, Fonzie and Farr drove to Derrick's home. On their way, they called Theresa to ask her to confirm that no one was at Derrick's house. Theresa called Derrick's house and then called Fonzie to inform him that no one answered the phone at Derrick's house. Fonzie and Farr parked the car across the street behind Derrick's house, climbed through the hole in the backyard fence, entered the house through the unlocked window, and waited. Fonzie gave Farr a .380 caliber,

semiautomatic handgun, and Fonzie searched the house for other weapons and found a knife and baseball bat. When Derrick and his girlfriend, Lorraine Johnson, arrived at the house, Farr shot Derrick twice in the back of the head. After grabbing Derrick's wallet, Farr exited the house with Fonzie, and both men ran to the car and drove back to the apartment.

The next day, officers came to the apartment and questioned the group. Farr told the officers he had been playing basketball at the time Derrick was killed. The next day, Farr took a bus back to Arkansas. Months after the incident, Farr ran into Fonzie and Theresa in Arkansas on two different occasions. Both times, Fonzie told Farr he did not have his money. Frustrated, Farr began sharing the story with his mother and two other individuals, and eventually, Farr was arrested for Derrick's murder.

In August of 2005, Farr was tried and convicted for Derrick's murder. Facing a possible life sentence, Farr made an arrangement with the district attorney's office to reveal everything he knew about the murder in exchange for a forty-year cap on his prison sentence. On January 6, 2008, Fonzie was tried by a jury, found guilty for capital murder, and sentenced to life in prison.

## STANDARD OF REVIEW

We review a challenge to the denial of a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)). We examine the evidence in the light most favorable to the verdict and determine whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See id*.

Under article 38.14 of the Texas Code of Criminal Procedure, a conviction cannot be sustained on the testimony of an accomplice unless other evidence exists that tends to connect a

defendant to the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2006). Article 38.14 also provides that while the corroborating evidence does not need to directly connect the defendant to the crime, the evidence must do more than merely show the commission of the offense. *Id.*

To determine whether there is sufficient corroborating evidence, we eliminate the accomplice testimony from our consideration and examine the record to ascertain whether the remaining evidence tends to connect the defendant with the offense. *See McDuff,* 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *see also Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). "The non-accomplice evidence need not be sufficient itself to establish the accused's guilt beyond a reasonable doubt." *Hernandez*, 939 S.W.2d at 176. For the corroboration requirement to be met, the law only requires for the non-accomplice evidence to tend to connect the defendant to the offense. *Id.*; *see also Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). All of the facts and circumstances, both factual and circumstantial, in the case may be considered when determining whether the accomplice testimony was properly corroborated. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

## DISCUSSION

In his sole issue on appeal, Fonzie contends the evidence is insufficient to corroborate Farr's accomplice-witness testimony. Fonzie argues that the State's corroborating evidence only confirmed Farr's guilt. According to Fonzie, the offered evidence did not establish that Fonzie was involved in the murder by either hiring Farr or participating in the actual murder; therefore, the offered evidence did not tend to connect Fonzie to Derrick's murder.

Farr testified that Fonzie provided him with a .380 caliber, semiautomatic handgun. Farr further testified that he and Fonzie drove back to Derrick's house to carry out the murder plan. After Theresa confirmed no one was at Derrick's house, he and Fonzie parked the car across the street behind Derrick's house. Farr explained how he and Fonzie entered the house through the unlocked window. After entering the house, Fonzie looked for additional weapons and found a knife and baseball bat. Farr testified that the two men then carried out their plan.

The State produced non-accomplice testimony that an offense was committed and that Fonzie was present during its commission. To begin, the evidence establishes that Fonzie was either in close proximity to or in contact with the discharged .380 caliber gun. One of the investigating officers obtained consent to search Theresa and Fonzie's apartment and took Fonzie's clothes, including a vest, that Fonzie was wearing the day of the murder. The results from the Bexar County Criminal Investigation Laboratory revealed that Fonzie's reversible vest contained gunshot residue on the upper right quadrant of the vest. Additionally, Michael V. Martinez, the forensic scientist who conducted the laboratory test, concluded that based on the finding of gunshot residue on Fonzie's vest, the vest was either in close proximity with a discharged firearm or in contact with a discharged firearm. Although this evidence does not directly establish Fonzie's guilt in entering an agreement with Farr to shoot Derrick, the evidence tends to connect Fonzie to the offense. *See Cockrum v. State*, 758 S.W.2d 577, 581 (Tex. Crim. App. 1988) ("Proof that connects an accused to a weapon used in an offense is proper corroborative evidence.").

In addition, Detective Charles Campbell testified that he found a flashlight and metal baseball bat on the floor near the second bedroom as well as a knife sheath on the ground in the backyard. These were the same "additional weapons" Farr testified that Fonzie found in searching Derrick's

house. Detective Campbell also testified that he observed a partially opened window and window screen lying in the grass as well as found two .380 caliber casings fired from a semiautomatic handgun at the crime scene. Additionally, another State witness, Investigator Arturo Cervantes, testified that one of the calls recorded on Derrick's CALLER ID box came from Emanuel Fonzie's residence around 6:30 p.m., verifying Farr's testimony that Theresa called Derrick's house from Fonzie's apartment.

The State also produced non-accomplice evidence that Fonzie and Farr were seen together near the time and place of the crime in Theresa's Oldsmobile. First, a neighbor, Jimmy Trammell, testified that he had noticed a lighter, brighter colored Oldsmobile with either something on the dash or hanging from the rearview mirror parked in a dirt driveway near Derrick's house as he was walking to church before his 7:00 p.m. bible study class. Trammell also testified that it was unusual for a car to be parked in that area. Another neighbor, Stephanie Espinoza, testified that she saw Theresa's green Oldsmobile with two African-American males inside the car parked in Derrick's driveway on her way to the dry-cleaners between 6:00 and 6:15 p.m. Espinoza testified that she recognized the vehicle as Theresa's vehicle because it had a little Taco Bell dog hanging from the windshield. Espinoza testified that on the way back from the cleaners, around approximately 6:25 p.m., she saw the green Oldsmobile with the two African-American men inside it come up very fast behind her and speed off towards I-35.

On cross examination, Espinoza further testified she could identify one of the African-American men as Theresa's boyfriend, Fonzie, when the car sped past her at the four-way stop. Espinoza testified she recognized Fonzie based on an earlier encounter she had when she bumped into Theresa, Fonzie, and Farr at a Super Wal-Mart. Accordingly, Trammell and Espinoza's detailed

testimony regarding Theresa's Oldsmobile and identifying Fonzie near the time and place of the crime is proper corroborating evidence. *See Cockrum*, 758 S.W.2d at 581 ("Evidence that a defendant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence."); *see also McDuff*, 939 S.W.2d at 613. Both witnesses' testimonies place Fonzie in Theresa's Oldsmobile with Farr at or near Derrick's house immediately before and after the commission of the crime.

When viewed jointly, the gun residue on Fonzie's vest, the verification of the baseball bat and knife sheath located at the crime scene, the CALLER ID box's confirmation that someone from Fonzie's house called Derrick's house around 6:30 p.m., Trammell's testimony regarding Theresa's Oldsmobile located near Derrick's house, and Espinoza's testimony identifying Fonzie and Farr in Theresa's Oldsmobile before and after the commission of the crime, we hold that the State presented sufficient non-accomplice evidence that tends to connect Fonzie to the commission of the offense as required by article 38.14. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2006); *Cockrum*, 758 S.W.2d at 581; *McDuff,* 939 S.W.2d at 613. Accordingly, we overrule Fonzie's sole issue on appeal.

## CONCLUSION

The judgment of the trial court is affirmed.

Marialyn Barnard, Justice

Do not publish