Jesus A. CASTILLO, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–00–01522–CR.

Court of Appeals of Texas, Dallas.

July 2, 2002.

Paul Shunatona, Law Offices of Paul R. Shunatona, Dallas, Roger W. Wilcox, Paul J. Cambria, Jr., Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP, Buffalo, NY, for Appellant.

William T. (Bill) Hill, Jr., Appellate Section, Karen R. Wise, Assistant District Attorney, Dallas, for State.

Before Justices JAMES, FITZGERALD, and FRANCIS.

## OPINION

Opinion By Justice FRANCIS.

A jury convicted Jesus A. Castillo, Jr. of misdemeanor obscenity for selling a sexually explicit comic book to an undercover Dallas police officer. In eight points of error, appellant complains (1) the evidence is legally and factually insufficient to support his conviction, (2) the comic book is not "constitutionally obscene," (3) the trial court erred in admitting certain evidence, and (4) he was denied his due process rights by the court reporter's failure to record the punishment hearing. For the reasons set out below, we overrule all points of error and affirm the trial court's judgment.

Appellant was manager at Keith's Comics, a bookstore located on Mockingbird Lane in a neighborhood of residences, businesses, and an elementary school. Responding to a citizen complaint, Craig Reynerson, an undercover detective with the vice squad of the Dallas Police Department, went to Keith's Comics "[t]o see if there was any obscenity being sold in the store." Reynerson said the store had numerous shelves and a couple of display cases with "action fantasy" comic books, such as "Superman" and "Batman," and "action figure-type figurines." About three shelves in the back of the store, however, contained violent and sexually explicit comic books. Although this area was not separated by a doorway, a sign was displayed at the entrance stating, "No One Under 18 Allowed Past This Point." From this area Reynerson selected a comic book, "Demon Beast Invasion, The Fallen." Reynerson made this selection because the front cover depicted what "appear[ed] to

be a nude female" and contained a warning label, "Absolutely Not For Children." According to Reynerson, all the comic books with that label contained sexually explicit depictions.

Reynerson took the comic book to the counter, handed it to appellant with the front cover showing, and paid for it. Appellant placed the comic book in a bag, and Reynerson left. He took the comic book to his office and reviewed it. Reynerson said the comic book depicted genitals in a state of arousal and contained acts of sodomy, masturbation, excretory functions, sadism, and masochism. Reynerson described one scene in which a demon, transformed into a tree, penetrated a female with its roots. After reviewing the book and comparing it to other materials, he concluded the book was obscene. Reynerson did not know the book was the second in a four-part series. However, he purchased the book individually and did not remember seeing any of the other volumes. After Reynerson's testimony, the State rested its case.

Appellant testified he had been manager at Keith's Comics for three years. The store included a section containing violent and mature theme comic books; children were not allowed in that area. Appellant remembered selling "Demon Beast Invasion" to Reynerson. He testified that Reynerson came into the store and went straight to the "over 18" section. After about five minutes, appellant asked Reynerson if he needed help, and Reynerson specifically asked for the comic book at issue here. Appellant told Reynerson that he thought the store was sold out of the book because it was a couple of years old. Appellant asked Reynerson if he wanted to put the book on a request list, and Reynerson declined. Appellant then returned to the front of the store. About five minutes later, Reynerson came to the counter with

"Demon Beast Invasion" and handed it to appellant. Appellant rang up the sale and put the comic book in a bag. He remembered "seeing the cover" but denied seeing "the woman on the cover" or "any blurbs saying that it had adult content." When asked if he had ever seen the book prior to selling it to Reynerson, appellant replied, "I saw it in '98. I have a good memory of these things." However, he said he did not look through the book and the first time he saw its contents "panel by panel" was at trial.

On cross-examination, appellant acknowledged that he knew exactly which comic book Reynerson was referring to and was familiar with "Demon Beast Invasion" from its cover but "[n]ot from the story content." He acknowledged the comic book was shelved in the adult section and that the books with the warning label were kept in that section because of the sexually explicit nature of their contents. On re-direct, he clarified his answer, saying some of the books may be violent and have no sexual content.

As part of his defense, appellant also called two experts. Scott McCloud, an award-winning author and comic book artist, testified that sixty-eight percent of comic book readers are over the age of eighteen. He explained comic books have diversified over the years to include more general interest fantasy, autobiography, romance, and "very naturalistic fiction." He told the jury that comic books were "huge" in Japan. McCloud had read all four volumes of "Demon Beast Invasion." He described the series as a genre of Japanese horror/science fiction dealing with the alien infiltration of earth culture with themes of love and evil. In McCloud's opinion, although the writer and author struggled in certain areas, the series and volume two specifically have serious literary and artistic merit because

of the effort and skill involved in the production. He acknowledged the comic book is "sexually potent in places," although he did not find the series, or volume two, sexually arousing.

On cross-examination, McCloud admitted the series "push[es] the genre" with its alienation and sexual subject matter. Further, he said volume two "contains probably the most sexual[ly] explicit material" of any of the four and agreed most of the issue "is basically sex." Nevertheless, in his opinion, the sexual scenes should be interpreted in light of volume one, which set out the characters in "healthy, normal relations." When questioned whether he thought the tree scene was "perverted," McCloud replied, "I think it's disturbing ... to most readers. And it's meant to be."

Susan Napier, an associate professor in Asian studies at the University of Texas at Austin, is a specialist in Japanese literature and culture and has extensively studied "anime" and "manga." Anime is the short word for Japanese animation; manga is a Japanese word for comic books. Like McCloud, Napier had read all four volume of "Demon Beast Invasion" and believed volume two should be interpreted in context with the other three volumes of the series. Napier briefly summarized the contents of each of the volumes and explained the story line deals with love, alien infiltration, and the attempt to overcome the infiltration. According to Napier, Japanese culture is fascinated with metamorphosis, bizarre creatures, and the apocalypse, which is what she said the series depicts. Napier testified the narrative, suspense, love story, and "beautifully drawn" scenes gave the series and volume two serious literary and artistic value. Because the story also involved the desire for power, Napier believed the series also had political value.

Finally, Michael Christopher, a licensed private investigator, testified that sexually explicit materials are "prevalent" in North Texas. Christopher went to a number of different stores near Keith's and bought magazines depicting various sexually explicit material. For instance, at a convenience store less than one mile from Keith's, he purchased a Penthouse magazine that had color photographs of men and women performing sex acts and a story of two women having sex with a grasshopper. At a nearby adult boutique, Christopher bought three other magazines that depicted oral sex, anal sex, sex with multiple partners, and bondage. Christopher testified he has gathered these types of material all over North Texas. When asked if the materials were acceptable in the State of Texas, he replied, "I guess so. They are sold all over the place."

■■■■ Appellant's first four points of error challenge the legal and factual sufficiency of the evidence to support his conviction. When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Chambers v. State,* 866 S.W.2d 9, 15 (Tex.Crim.App.1993). In this review, the trier of fact is the exclusive judge of the weight and credibility given to witness testimony. *See Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim. App.1996).

■■■■ In a factual sufficiency review, we ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is

greatly outweighed by contrary proof." *King v. State*, 29 S.W.3d 556, 563 (Tex. Crim.App.2000). We will reverse the fact finder's determination only if a manifest injustice occurred. *Id.* In conducting this analysis, we may disagree with the jury's determination, even if probative evidence supports the verdict, but we must avoid substituting our judgment for that of the fact finder. *See Johnson v. State*, 23 S.W.3d 1, 6 (Tex.Crim.App.2000).

A person commits an offense if, knowing its content and character, he promotes or possesses with intent to promote any obscene material or obscene device. TEX. PEN.CODE ANN. § 43.23(c)(1) (Vernon 1994). Obscene means material or a performance that:

(A) the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(B) depicts or describes:

(i) patently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genitals; and

(C) taken as a whole, lacks serious literary, artistic, political, and scientific value.

TEX. PEN.CODE ANN. § 43.21(a)(1) (Vernon 1994).

In his first and third points of error, appellant contends the evidence is legally and factually insufficient to establish beyond a reasonable doubt his knowledge of the content and character of the book. Additionally, appellant contends the evidence is factually insufficient to establish the book is patently offensive, appeals to the prurient interest, and lacks serious artistic and literary value.

■ As a threshold matter, we note that appellant asserts this Court may look *only* to the evidence presented by the State—Detective Reynerson's testimony—in determining the legal sufficiency of the evidence. He argues that because this case involves the " 'protected' status of expression," we should not consider the evidence presented by the defense in determining whether the State met its burden. He cites no law for this proposition, and we decline to do so in favor of the well-established law governing evidentiary sufficiency analysis. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App.1993) (explaining that court considers evidence presented at trial by both State and defense in determining sufficiency of evidence).

■ As stated previously, in an obscenity case, the State has the burden of establishing the defendant knew the character and content of the material in question. *See* TEX. PEN.CODE ANN. § 43.23; *Burden v. State*, 55 S.W.3d 608, 613 (Tex. Crim.App.2001); *Carroll v. State*, 701 S.W.2d 913, 914 (Tex.Crim.App.1986). The State need not prove that the defendant knew the material was obscene; it is enough that the defendant had knowledge of the sexually explicit character and content of the materials. *Burden*, 55 S.W.3d at 614. The State may satisfy this burden with either direct or circumstantial evidence. *Carroll*, 701 S.W.2d at 914.

In arguing the State failed to meet its burden, appellant relies heavily on the fact that Keith's Comics was not an adult bookstore and "did not retail predominantly

sexually explicit materials." He argues the comic book's cover did not depict "actual sexual conduct or even graphic nudity," and its title was not vulgar or sexually explicit.

While appellant's assertions are true, the evidence showed that appellant had managed Keith's Comics for two years when he sold the comic book, was familiar with the title, handled the comic book at the time of the sale, knew it was in the store's "adults-only" section, and knew the "adults-only" section contained sexually explicit material. Further, the record reflects the comic book contained a "not for children" warning label, and there was testimony that all the materials in the "adults-only" section contained sexually explicit material. Under these circumstances, we conclude there was legally sufficient circumstantial evidence from which the jury could find appellant had knowledge of the sexually explicit content and character of the comic book. We overrule his first point of error.

In the second point of error, appellant criticizes the "paucity of proof" presented by the State on knowledge and argues the evidence is factually insufficient when considering proof offered to negate scienter. In particular, he asks this Court to review the photographs of the comic book store, which illustrate the "predominantly non-adult nature of the store and its inventory." He argues that simply because the book was inappropriate for children is "not dispositive of a sexually obscene character" because Keith's offered comic books in the same section with "themes of violence with little or no sexual content" and for which a warning would be appropriate.

While we do not disagree with appellant's characterization of this evidence, we do disagree that the evidence is so weak as to render his conviction manifestly unjust. The fact that Keith's shelved more non-adult than adult inventory is not dispositive in light of the fact the store had a specific adults-only section. As stated previously, appellant managed the book store and had for two years when this offense occurred. He demonstrated his knowledge of adult-themed comic books at the beginning of his direct examination when his attorney asked him about random titles, all with which he was familiar.

Appellant was undisputedly familiar with "Demon Beast Invasion," saw the book in 1998, and had a "good memory of these things." He admitted he knew exactly to which magazine Reynerson referred, said he was familiar with the book from its cover, and knew the book was shelved in the adults-only section. Although he denied seeing "the woman on the cover" or "any blurbs saying that it had adult content" when Reynerson purchased it, appellant's testimony was clear that he previously had seen the cover and knew it was shelved in the adults-only section. Further, appellant knew all the materials in the "adults-only" section were either so sexually explicit or so violent that they precluded access by children. The cover of a nude female certainly suggests this comic book fell into the sexually explicit category. Thus, even if a jury believed appellant had never seen the comic book "panel by panel" until trial, it could still rationally find appellant was aware of its sexually explicit contents. The evidence establishing knowledge of content and character is not so weak as to undermine confidence in the jury's verdict, nor is it greatly outweighed by contrary proof.

We likewise reject appellant's complaint that the evidence is factually insufficient to prove the comic book lacked serious literary, artistic, scientific, or political value. We recognize that appellant presented two experts to testify as to the literary, artistic, and political value of the

comic book; however, the jury also had Reynerson's opinion that the book was obscene because of the sexual content it depicted. In particular, he testified the comic book contained acts of sexual intercourse, oral sodomy, masturbation, excretory functions, sadism, masochism, and lewd exhibition of the genitals. Reynerson testified he looked at the book from front to back and believed the book appealed to the prurient interest in sex. Reynerson did not believe the book had any literary, scientific, artistic, or political value. The jury heard competing opinions and apparently found Reynerson's opinion more compelling. Moreover, the jury had the comic book. The fact that the two defense experts did not find the material to be obscene would not prevent the jury from deciding it (1) lacked serious literary, artistic, scientific, or political value or (2) would be offensive to the average member of the community. *See Beier v. State,* 681 S.W.2d 124, 127 (Tex.App.-Houston [14th Dist.] 1984), *rev'd on other grounds,* 687 S.W.2d 2 (Tex.Crim.App.1985).

■ Finally, we reject appellant's argument that the book is not patently offensive when considered in light of contemporary community standards. In making this argument, appellant relies on the testimony of his private investigator, who presented other magazines purchased near Keith's containing "more graphic" depictions than "Demon Beast Invasion." Assuming all of the books admitted were comparable to the comic book at issue, the fact these books were available does not mean they were not likewise obscene; it could suggest that other persons are engaged in similar activity. *See Burden,* 55 S.W.3d at 616. We conclude the evidence was factually sufficient to establish that (1) appellant knew the sexually explicit content and character of the comic book, (2) the book lacked literary, artistic, scientific,

or political value, and (3) was patently offensive. Accordingly, we overrule the third point of error.

■ In his second and fourth points of error, which he argues jointly, appellant asserts the State's failure to present evidence concerning the content and character of all four volumes of the "Demon Beast Invasion" series renders the evidence legally and factually insufficient. Appellant points to language in the penal code and case law requiring the issues of prurient interest and artistic and literary value to be considered in light of the material "taken as a whole." *See* Tex. Pen. Code Ann. § 43.21(a); *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). He argues defense experts testified that volume two should not be considered independently because the story line developed in volume one and continued throughout the series.

Appellant's argument ignores the fact that volume two was sold as an individual unit, not as part of a series. Therefore, the State only had to prove that volume two, taken as a whole, was obscene. The other volumes were not necessary or relevant to the obscenity issue. In so concluding, we reject any assertion that the State must present all volumes in a series so that the jury can consider the context in determining whether the material is obscene, even when the complained-of volume is sold as a separate, independent unit, as was the case here. Considering the appropriate standards of review, we conclude the State's failure to present the other three volumes did not render the evidence legally or factually insufficient. We overrule the second and fourth points of error.

■ In his fifth point of error, appellant asserts the book is not "constitutionally obscene." Relying on McCloud's and Napier's testimony, appellant maintains

the book warrants First Amendment protection. We disagree.

In determining whether material is "constitutionally obscene," appellate courts are obligated to independently review and evaluate the material in accordance with a three-part test set out in *Miller v. California.* *See Andrews v. State,* 652 S.W.2d 370, 383 (Tex.Crim.App. 1983); *Ho v. State,* 856 S.W.2d 495, 499 (Tex.App.-Houston [1st Dist.] 1993, no pet.). This three-part test requires the court to consider whether: (1) the average person, applying contemporary community standards would find the work, taken as a whole, appeals to the prurient interest in sex; (2) the work depicts or describes in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. *Andrews,* 652 S.W.2d at 378 (quoting *Miller,* 413 U.S. at 24, 93 S.Ct. 2607). Work which does not appeal to the prurient interest, does not depict sexual conduct in a patently offensive way, and does not lack serious literary, artistic, political, or scientific value is constitutionally protected. *See id.* at 384.

Applying this three-part test to "Demon Beast Invasion, The Fallen—Volume 2," we conclude the comic book is not constitutionally protected. The first three pages contain a series of very graphic drawings of women engaging in oral sex and drawings prominently displaying the female genitals. *See* Tex. Pen.Code Ann. § 43.21(a)(1)(B). Over the next several pages, there are also drawings of a man and woman engaging in sexual intercourse and oral sex, and, again, the genitals are prominently displayed in a state of stimulation and arousal. *See id.* Additionally, the book contains sexually explicit comments and drawings explicitly depicting excretory functions and a female engaging in intercourse with a tree root. *See id.* These drawings and comments are patently offensive and neither advocate nor communicate any ideas or opinions concerning serious literary, artistic, political, or scientific values. *See Andrews,* 652 S.W.2d at 384. We conclude the average person, applying contemporary community standards in this State, would find "Demon Beast Invasion, The Fallen—Volume 2," taken as a whole, would only appeal to those who have a prurient interest in sex and therefore is obscene. *Id.* We overrule the fifth point of error.

In his sixth point of error, appellant complains the trial court erred in admitting testimony about the proximity of an elementary school to the comic book store. Appellant filed a motion in limine seeking to preclude the State from "making any sort of reference or allusion to the fact that Keith's Comics ... is in close proximity to a school." In a pretrial hearing on the motion, the defense argued such evidence was irrelevant and its probative value, if any, was outweighed by its prejudicial effect. The trial court denied the motion in limine. When the evidence was adduced at trial through Reynerson, appellant did not object. It is well-settled that the denial of a motion in limine is not sufficient to preserve error for review, but rather there must be a proper objection to the proffered evidence. *McDuff v. State,* 939 S.W.2d 607, 618 (Tex.Crim.App.1997). By failing to object when the evidence was offered at trial, appellant failed to preserve his claim for review. *See id.* We overrule the sixth point of error.

In his seventh point of error, appellant argues the trial court erred in admitting Reynerson's opinion that the comic book was obscene over his objections that Reynerson was "not qualified to give his opinion" on the matter. We have reviewed the record in this case and, after

doing so, conclude we need not decide whether the trial judge erred in allowing the testimony because, even if he did, the same evidence was admitted later without objection. The overruling of an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998). This rule applies whether the other evidence was introduced by the defendant or the State. *Id.*

Here, the State asked Reynerson if, in his opinion, the comic book met the "definition of obscenity." Appellant's objection was overruled, and Reynerson replied, "Yes." The following then occurred:

[PROSECUTOR]: And in your opinion are the acts depicted within this comic book patently offensive to the current community standards of decency?

[DEFENSE COUNSEL]: Objection, leading.

[TRIAL COURT]: Sustained.

[PROSECUTOR]: You talked about the Penal Code. What's the first element in obtaining obscenity on the Penal Code?

[REYNERSON]: If it's patently offensive to the average Texan's community standards, yes.

[PROSECUTOR]: And did you form an opinion as to whether or not this particular comic book would be patently offensively [sic] to the average Texan?

[REYNERSON]: Yes.

[PROSECUTOR]: And what is that opinion?

[REYNERSON]: *That it was obscene, that it was offensive.*

[PROSECUTOR]: And why?

[REYNERSON]: Because of the sexual contact depicted in it.

Because the same opinion was elicited only questions later without any objection from appellant, we conclude error, if any, was harmless. *Id.* To the extent appellant complains that Reynerson was allowed to give an opinion on the lack of serious artistic, literary, scientific, or political value, again he cannot be harmed. This opinion goes to an element of the very definition of obscenity. Thus, once Reynerson testified, without objection, that the material was obscene, he necessarily testified it lacked serious literary, artistic, scientific, or political value. We overrule the seventh point of error.

■■■ In his eighth point of error, appellant asserts he is entitled to reversal because the court reporter failed to record the punishment hearing. This failure, he contends, constituted a violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. We disagree.

Prior to trial, appellant elected to have the trial court assess punishment in the event of a conviction by the jury. After the jury returned its guilty verdict, the trial court ordered a presentence investigation and recessed. The trial court ultimately assessed punishment at 180 days in jail, probated for twelve months, and a $4000 fine. The punishment hearing was not recorded. Appellant's trial counsel then filed a timely motion for new trial; the motion, however, did not complain that the punishment hearing was not recorded.

■■■ Texas Rule of Appellate Procedure 33.1(a) provides that, to present a complaint for appellate review, the record must show (1) the complaint was presented by timely request, objection, or motion and was sufficiently specific to make the trial judge aware of the complaint and (2) the trial judge either ruled or refused to rule and appellant objected to the refusal. Tex. R.App. P. 33.1(a). An objection is required to inform the trial judge of the basis of the

objection and afford him the opportunity to rule. *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Crim.App.1988). Even constitutional error may be waived. *Wright v. State*, 28 S.W.3d 526, 536 (Tex.Crim.App. 2000), *cert. denied*, 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001).

Here, appellant has not shown that he alerted the trial judge to the fact that the court reporter was not making a record of the punishment hearing. Moreover, appellant's trial counsel filed a motion for new trial but did not complain that his punishment hearing was not recorded, nor did he complain of any other punishment issue. Under these circumstances, we conclude appellant has waived his complaint. We overrule the eighth point of error.

We affirm the trial court's judgment.

Dissenting Opinion By Justice JAMES.

I take no issue with the majority's opinion the material is obscene and unprotected by the First Amendment. I also take no issue with the majority's opinion (1) the State's failure to present the content and character of the entire comic book series does not render the evidence legally and factually insufficient; and (2) the evidence is legally sufficient to establish beyond a reasonable doubt appellant's knowledge of the content and character of the book. My disagreement is in the majority's conclusion the evidence of appellant's knowledge of content and character is not so weak as to render appellant's conviction manifestly unjust. Because I do not find in the record sufficient evidence appellant had knowledge of the sexually explicit character and content of the offending comic book to overcome the presumption of appellant's innocence, I respectfully dissent.

In conducting a factual sufficiency review, we must show deference, although not absolute deference, to the fact finder. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex.

Crim.App.2000). The degree of deference must be proportionate with the facts we can glean from the trial record, considering only those few matters bearing on credibility that can be fully determined from the transcribed record before us on appeal. *Id.* Unless the available record clearly reveals a different result is appropriate, we must defer to the jury's determination of the weight to give contradictory testimonial evidence because resolution often turns on credibility and demeanor of witnesses. *Id.* When we find the evidence supporting conviction factually insufficient, we must detail all of the evidence and show how it is insufficient. *Id.* Accordingly, I will detail the relevant evidence concerning appellant's knowledge of the character and content of the offending comic book.

At the outset, relying solely on circumstantial evidence, the majority equates appellant's extensive knowledge of comic books in the store's inventory with his implied recognition of the specific obscene character and content of "Demon Beast Invasion." The majority then builds upon that tenuous equation the further improvisation that, because the book was shelved in the adults-only section of the store and had a not-for-children label on its cover, appellant "was undisputably familiar with 'Demon Beast Invasion.'" To the contrary, appellant testified he knew the comic book by its front cover only and had never seen its contents. When asked for the comic book, appellant told Reynerson the book was not in stock and offered to order it for him. When Reynerson returned with a copy of the comic book, he handed it to appellant with the front cover up. Appellant received payment from the officer and placed it in a bag. Contrary to the majority's opinion, the cover does not place appellant on notice of the comic book's content and character. The title on

the cover, "Demon Beast Invasion," may be characterized as violent, but not sexually explicit. Moreover, although the majority characterizes the cover as depicting a "nude female," it actually depicts a cartoon line-drawing of a female figure, either nude or partially nude, and it suggests no sexually specific content. It does not reveal any genitals and does not suggest a state of arousal. In fact, Reynerson described the cover as "It *appears* to be a nude female" (emphasis added). Additionally, Reynerson testified he took the comic book back to his office to compare it to other materials to determine if it met the criteria of the penal code. This is some evidence from the State the character and content of the book could not be readily determined from its cover or the label on the cover. The strongest evidence adduced by the State was Reynerson's testimony that all of the comic books he saw bearing the "Absolutely Not for Children" label contained sexually explicit depictions. However, this testimony does not add anything to the issue of *appellant's knowledge* because comic books shelved in the restricted area of Keith's Comics containing violent themes were also given this warning label.

Appellant admitted he was familiar with the title of "Demon Beast Invasion," and knew it was on three shelves restricted to adult readers because of the violent and sexual nature of the comic books placed there. He testified he had not seen the contents until they were presented at trial. His testimony was consistent with the testimony of Reynerson that appellant saw only the front cover of the comic book before he placed it in a bag and handed it to the officer. Appellant denied seeing the "absolutely not for children" label. If Reynerson had to take the book back to his office to determine its character and content, how can it be said it is "undisputable" that the restricted location of the comic book and appellant's observation of the cover placed him on notice of the character and content of "Demon Beast Invasion"?

The majority's opinion relies heavily on *Burden v. State*, 55 S.W.3d 608 (Tex.Crim. App.2001), to sustain the jury's inferred finding of appellant's knowledge based on this limited circumstantial evidence. I respectfully suggest this reliance is misplaced. In *Burden*, an undercover detective purchased an obscene videotape from a defendant employed in the Star Adult Video Center. *Id.* at 610. The offending video was purchased by first selecting a box bearing the title: "Hardcore Schoolgirls Volume 5." *Id.* The box had several sexual statements and eleven sexually explicit scenes. *Id.* Only sexually explicit videos were sold there. *Id.* at 611. The defendant testified the store had between twenty-five and thirty thousand videotapes, he knew the character of the films was sexually explicit, and he had a general understanding of what was on most of the tapes. *Id.* However, he denied he knew the exact content of the particular tape the detective purchased from him. *Id.* The court of criminal appeals held section 43.23(c)(1) does not require a defendant to have knowledge that what he promotes is legally obscene; the section requires only proof a defendant have knowledge of the material's sexually explicit character and content. *Id.* at 613. The defendant's own testimony provided direct evidence he had the requisite criminal scienter for conviction under section 43.23(c)(1). *Id.* at 614.

This is not so with the case before us. Here, Keith's Comics is primarily a mainstream magazine store carrying an inventory of comic books and action figures that have no sexually explicit contents. Only on three shelves in a restricted area are violent and sexually explicit books sold. Both sexually explicit and violent comic books bear the same warning label. The

cover of "Demon Beast Invasion" does not reveal its sexually explicit content and character. The direct evidence of appellant's criminal scienter or knowledge of the content and character of the comic book Reynerson purchased in this case consists of (a) appellant's denial he had ever seen its contents and assertion he did not know from its cover its sexually explicit contents; (b) the restricted area contained both violent and sexually explicit materials; and (c) the warning label for children was on both types of books. Nevertheless, the majority's opinion relies solely upon the location where the book was displayed, the front cover, and the warning label to provide circumstantial evidence sufficient to prove appellant's knowledge of the book's content and character.

In criminal prosecutions implicating First Amendment rights of free expression, the State must prove the defendant had the requisite criminal scienter. *See* *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Without this requirement, the State could "work a substantial restriction on the freedom of speech and press." *Id.*

With my conclusion that the cover conveyed no notice of its sexually explicit content, I would conclude the evidence falls far short of overcoming the constitutional and statutory presumption of innocence and proving beyond a reasonable doubt the requisite criminal scienter. *See* TEX.CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp. 2002); TEX. PEN.CODE ANN. § 2.01 (Vernon 1994); *Randle v. State,* 826 S.W.2d 943, 945 n. 3 (Tex.Crim.App.1992). I would apply the factual sufficiency formulation in *Johnson,* 23 S.W.3d at 11, to conclude the proof of guilt is so obviously weak as to undermine confidence in the jury's determination.

Accordingly, I respectfully dissent from that portion of the majority opinion finding the evidence factually sufficient. Because I would conclude the evidence is factually insufficient and remand for a new trial, I would not address the merits of the remaining points of error.