**Modified and Affirmed. Opinion Filed July 15, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00098-CR

## GILLERMO FERNANDO SANCHEZ, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court
Collin County, Texas
Trial Court Cause No. 416-81054-2013

## MEMORANDUM OPINION
Before Justices Francis, Evans, and Stoddart
Opinion by Justice Stoddart

A jury convicted Gillermo Fernando Sanchez of criminal mischief by tampering with an electric metering device without effective consent of the owner and causing pecuniary loss of less than $20,000. The trial court assessed punishment at 180 days in jail, suspended the sentence, placed Sanchez on community supervision for three years, and ordered restitution in the amount of $2,153.29. Sanchez argues on appeal that the evidence is insufficient to support his conviction, the restitution order is not supported by the record, and the jury charge failed to include an instruction on the proper use of a statutory presumption. The State raises a cross-point that the judgment should be modified to reflect the trial court's pronouncement of two years of community supervision and the name of Sanchez's trial attorney. We modify the trial court's judgment and affirm as modified.

BACKGROUND

On December 30, 2012, Sanchez's neighbor saw a man standing on the trunk of a car, which was parked next to a utility pole. Afraid the man might be electrocuted, the neighbor reported it to police. Officer Bryan Kile responded to the report and spoke with Sanchez. Sanchez said the power was out at his home and he was removing a piece from the utility pole to fix it. Kile collected the piece from the pole, took photographs, and contacted the director of security at Oncor. A few days later, Kile again spoke with Sanchez. After being advised of his *Miranda* rights, Sanchez denied attempting to steal electricity, but said he had been a lineman for TXU for thirty years and knew how to accomplish what he was trying to do.

Jonathan Nichols, a revenue security employee of Oncor, went to Sanchez's house on December 31, 2012. Nichols took pictures of the meter and electrical connections at the house. He saw that both the inner and outer seals on the meter had been removed. Nichols testified that removing those seals is tampering and customers do not have consent from Oncor to take that action. Nichols also noticed several wires running from the meter base. Although the wires should have been located inside the conduit, they ran to an open breaker box on the patio wall, indicating possible tampering. To alleviate the unsafe condition created by the stray wiring, Nichols disconnected the electricity at the pole. In response, Sanchez told Nichols he was a former TXU employee and would climb the pole and reconnect the power after Nichols left. Nichols testified that a lineman would have the knowledge and ability to remove a meter and divert electricity.

On the patio, Nichols found additional items, including a breaker and a broken part of the meter base called a lug. He explained that a lug is part of the meter base that the meter plugs into to make a connection allowing electricity to flow from the utility wires through the meter and into the house. Lugs are designed to last for the life of the meter and a broken lug indicates the meter has been removed repeatedly from the base. Lugs do not break due to normal repair

operations. A burned lug indicates either the spring steel has lost elasticity over time or that a foreign object was placed into the meter. This creates a poor connection and causes the parts to heat up.

The two lugs in the meter at Sanchez's house were not from the same meter, indicating one or both had been replaced. A lug is only replaced if it is broken or burned. While there are reasons other than tampering that can cause a burned lug, Nichols was able to exclude those reasons in this case. He testified that replacing a lug inside the meter base without consent constitutes tampering. Only Oncor employees have permission to replace a lug or repair a meter.

Data obtained from Sanchez's meter indicated it was removed from December 24, through December 26, 2012, as well as parts of December 29 and December 30. Nichols explained that during those times no power would flow into Sanchez's house unless a jumper or other conductor were installed in the meter base to complete the electrical connection.

Additional data obtained from the meter showed a total of 48 power outages between October 2012 and December 31, 2012. However, Oncor's records did not reflect a corresponding number of service calls to Sanchez's house during that time period.

Kenneth Scott Stanley, a measurement supervisor for revenue and security at Oncor, assisted with the investigation. He explained that a significant reduction in average monthly electrical usage is an indication of tampering. By examining historical data for Sanchez's house, Stanley found a large reduction in usage began to occur in February, 2005. He concluded that is when the tampering began.

To determine Oncor's monetary loss, Stanley analyzed Sanchez's average monthly usage from January 2004 through January 2005. From that data, he estimated the amount of electricity Sanchez was using before the tampering was 1,000 kWh per month. Sanchez's reported usage after February 2005 was less than the monthly average before the tampering. The difference between the monthly average and the reported usage represents Oncor's loss. Oncor also

–3–

incurred fees of $419.75 for meter costs, locking devices, labor and transportation. Stanley testified that Oncor's monetary loss was less than $20,000. While some of the records in evidence list Sanchez's wife on the account, others indicate Sanchez called several times over the years to report power outages, request repairs, complain that meter readings were wrong, and to request billing adjustments.

Diane Hallmark, a paralegal in Oncor's legal department, testified that Oncor is regulated by the Public Utility Commission and owns the meters, poles, and equipment necessary to supply electricity to the public. She testified that Oncor suffers monetary damage when a person tampers with a meter and receives electricity without paying for it. She confirmed that a customer is never given permission to divert the power supply or tamper with the Oncor's equipment.

At trial, Sanchez testified that on December 30, 2012, he observed fire and smoke coming from the meter attached to his home. He turned the power off in the utility room then went outside and pulled the meter off the base. He saw that a lug was burned. Sanchez did not call TXU or Oncor about the meter or the fire. Nor did he call the fire department. Rather, he admitted removing a lug from a meter on nearby property to replace the burned lug in his own meter. Sanchez denied stealing electricity and denied breaking into his meter, but admitted he knew how to tamper with a meter. Sanchez lived at the property for several years with his wife and grandson. He had several gas appliances in the home, but admitted on cross-examination that the appliances were installed before 2004 and would not explain the substantial change in electricity usage in 2005.

## ANALYSIS

### A. Sufficiency of the Evidence

In his first issue, Sanchez argues the evidence is insufficient to support the conviction for criminal mischief. In his second, he argues the trial court erred by denying his motion for

directed verdict based on insufficiency of the evidence.[1] We discuss the issues together.

We review a challenge to the sufficiency of the evidence in a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id*. Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id*. When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id*. Direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id*.

Sanchez was charged with criminal mischief under subsection 28.03(a)(2). TEX. PENAL CODE ANN. § 28.03(a)(2). Under that subsection, a person commits criminal mischief if, without effective consent of the owner, the person intentionally or knowingly tampers with tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person. *Id.* The offense is a state jail felony if the amount of pecuniary loss is less than $20,000 and the actor causes the diversion in whole or in part "or in any manner, including

---

[1] Sanchez asserts we may consider only the State's evidence in reviewing the denial of his motion for directed verdict. We disagree. The motion for directed verdict is a challenge to the sufficiency of the evidence and is reviewed based on all the evidence. *See Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (explaining that court considers evidence presented at trial by both State and defense in determining sufficiency of evidence); *Castillo v. State*, 79 S.W.3d 817, 823 (Tex. App.—Dallas 2002, pet. ref'd) (same).

installation or removal of any device for any such purpose, any public communications or public gas or power supply." *Id.* § 28.03(b)(4)(D).[2] Pecuniary loss means, "A loss of money or of something having monetary value." *Loss*, BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, any amount of pecuniary loss less than $20,000 involving diversion of the public power supply is a state jail felony. *See Santana v. State*, 59 S.W.3d 187, 193 (Tex. Crim. App. 2001) ("the Legislature proscribed tampering with a public utility as conduct that is harmful in and of itself").[3]

Relying on subsections 28.06(a) and (b), which define the amount of pecuniary loss if tangible property is destroyed or damaged, Sanchez contends that pecuniary loss under subsection 28.03(a)(2) *can only* result from destruction or damage to tangible property. We disagree. Section 28.03 provides three methods of committing criminal mischief.[4] Sanchez was charged with criminal mischief by tampering with tangible personal property and causing pecuniary loss under 28.03(a)(2). TEX. PENAL CODE ANN. § 28.03(a)(2). An offense under this subsection does not require damage to or destruction of the tangible personal property. The term "tampers with" includes "conduct that *falls short of damaging the property* but nevertheless interferes with the owner's proprietary rights or abuses the property in a way that diminishes its value." *Williams v. State*, 596 S.W.2d 862, 865 (Tex. Crim. App. 1980) (emphasis added)

---

[2] Section 28.03 was amended in 2015 to increase the amount of pecuniary loss necessary to determine the grade of the offense. *See* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 5, Tex. Sess. Law Serv. 4208, 4210 (West) (codified at TEX. PENAL CODE ANN. § 28.03). The amendment applies only to offenses committed on or after the effective date and the former law is continued in effect for purposes of offenses committed before the effective date. *Id.* § 30, 2015 Tex. Sess. Law Serv. at 4220. We refer to the law in effect at the time of the offense.

[3] Even without a showing of pecuniary loss, a defendant may be guilty of criminal mischief under (a)(2) for diversion of public utilities if the tampering caused substantial inconvenience. *Id.* at 192–93.

[4] *See Santana v. State*, 59 S.W.3d 187, 191 (Tex. Crim. App. 2001) (contrasting offense under (a)(2) with offenses under (a)(1) and (a)(3)). A person commits the offense under subsection (a)(1) by damaging or destroying tangible property. TEX. PENAL CODE ANN. § 28.03(a)(1). Under subsection (a)(2), a person commits the offense by tampering with tangible property and causing pecuniary loss. *Id.* § 28.03(a)(2). Under subsection (a)(3), a person commits the offense by making markings on tangible property. *Id.* § 28.03(a)(3).

(discussing prior version of section 28.03 regarding interfering with telephone service).[5] Because criminal mischief can be committed under section (a)(2) without damage or destruction to tangible personal property, the statute cannot be read to require the State to prove pecuniary loss solely in the form of damage or destruction to property. We will not presume the legislature did a useless thing. *See Hardy v. State*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997) (courts presume every word in statute has been used for a purpose and will give effect to each word, phrase, clause, and sentence). We give the offense defined in section 28.03(a)(2) its plain and ordinary meaning. *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

Moreover, Sanchez fails to read section 28.06 as a whole. Subsection (a) defines the amount of pecuniary loss if property is destroyed; subsection (b) defines the amount of pecuniary loss if property is damaged; and subsection (c) defines pecuniary loss as it relates to documents. TEX. PENAL CODE ANN. § 28.06(a)–(c). Under the facts of this case, subsections (a)–(c) do not apply. However, subsection (d) provides: "if the amount of pecuniary loss cannot be ascertained by the criteria set forth in Subsections (a) through (c), the amount of pecuniary loss is deemed to be greater than $500 but less than $1500." Id. §28.06(d). Here, the amount of pecuniary loss caused by tampering with tangible personal property cannot be determined by the criteria set out in subsections (a) through (c) of section 28.06. Therefore, the amount is deemed to be greater than $500 but less than $1,500.

Having determined that the State was not required to prove damage or destruction to tangible property in order to establish pecuniary loss, we now consider whether there is sufficient evidence to show that Sanchez tampered with his meter by diverting the public power supply resulting in pecuniary loss of less than $20,000.00.

---

[5] *See also Howlett v. State*, 994 S.W.2d 663, 665 (Tex. Crim. App. 1999) (diverting gas from flowing through meter gauge); *Robertson v. State*, 888 S.W.2d 493, 494–95 (Tex. App.—Amarillo 1994, pet ref'd) (diverting electricity from electrical wires and bypassing meter); *Edmondson v. State*, 747 S.W.2d 8, 9 (Tex. App.—El Paso 1988, pet ref'd) (diverting gas from public gas line).

Here, the record contains evidence that Sanchez tampered with the Oncor meter at his house. Nichols testified that the locking ring and inner and outer seals were removed before he arrived. Sanchez admitted to Kile that he removed a piece from a nearby pole to "fix" his power outage. Oncor did not consent to Sanchez "fixing" the meter at his house. The meter was removed several times between October and December of 2012, but there were no corresponding service calls made during that time period. There is also evidence of a significant and sustained drop in electric usage from 2005 through 2012. Any electricity diverted from flowing through the meter caused a pecuniary loss to Oncor. At a minimum, subsection 28.06(d) deems the value of that pecuniary loss to be greater than $500 but less than $1,500. The jury could reasonably infer Sanchez's intent from his statements that he would reconnect the power supply after Nichols left and his actions in "fixing" the meter without contacting the power company.

Viewing all the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that without effective consent of the owner, Sanchez intentionally or knowingly tampered with tangible personal property of Oncor, caused pecuniary loss to Oncor, the amount of pecuniary loss was less than $20,000, and Sanchez caused the diversion of the public power supply. *See Clayton*, 235 S.W.3d at 778. We overrule Sanchez's first and second issues.

**B. Restitution Order**

In his third issue, Sanchez argues the order for restitution is not supported by the record. Specifically, he asserts that any restitution not attributable to damaged or destroyed tangible personal property, such as lost revenue, improperly compensates Oncor for an offense other than the one for which Sanchez was found criminally responsible. We disagree.

The purpose of restitution in a criminal case is to restore the victim to his or her position before the offense and force the offender to address and remedy the specific harm caused. TEX. CODE CRIM. PROC. ANN. art. 42.037; *Burt v. State*, 445 S.W.3d 752, 756 (Tex. Crim. App. 2014);

–8–

*Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014). We review restitution orders for an abuse of discretion. *Cartwright v. State*, 605 S.W.2d 287, 288–89 (Tex. Crim. App. 1980). The amount of restitution must be just, and it must have a factual basis within the loss of the victim. *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999). A trial court may not order restitution for an offense for which the defendant is not criminally responsible. *Id.* at 697. A trial court may order restitution to any victim of the offense. TEX. CODE CRIM. PROC. ANN. art. 42.037(a). For purposes of the restitution statute, a victim is any person who suffered loss as a direct result of the criminal offense. *Hanna*, 426 S.W.3d at 94–95. Any dispute about the proper amount or type of restitution shall be resolved by the trial court under a preponderance of the evidence standard. TEX. CODE CRIM. PROC. ANN. art. 42.037(k); *Burt*, 445 S.W.3d at 756 n.15.

In arriving at a restitution amount, the State utilized documents in evidence to determine Sanchez's monthly average power usage during the time of the tampering, from 2005 to 2012. Then using bills from the 12 months before trial, the State calculated the average monthly power usage without the tampering. The State then calculated the difference between the monthly average without tampering and the monthly averages for the years with tampering. This difference was multiplied by 12 cents per kilowatt hour cost of power supply as shown in the documents. The trial court then subtracted a bill paid by Sanchez and arrived at a total amount of restitution of $2,153.29.[6]

The amount of restitution ordered by the trial court represents a loss to Oncor resulting from the diversion of power through the tampered meter at Sanchez's residence. Sanchez contends the loss of revenue does not pertain to tangible personal property and therefore compensates Oncor for theft of service rather than criminal mischief. Because he was not

---

[6] Oncor prepared a billing work sheet that showed the cost of 1,000 kWh at 12 cents per kWh for the period from February 2005 through December 2012 totaled $11,400. Stanley testified the work sheet was merely an estimate and that Oncor did not lose the full amount shown on the work sheet because Sanchez was using some electricity during the time period. Stanley testified Oncor's monetary loss was less than $20,000.

convicted for theft of service, Sanchez argues the restitution order is improper. We disagree. As discussed above, the offense of criminal mischief is not limited to the damage or destruction of tangible personal property. TEX. PENAL CODE ANN. § 28.03(a)(1). It also includes tampering with tangible property and causing pecuniary loss. *Id.* § 28.03(a)(2). Sanchez was convicted under section 28.03(a)(2) and the pecuniary loss caused by the diversion of electric power is the amount that should have been paid for the electricity actually used. We conclude the amount of restitution is supported by a preponderance of the evidence in the record and the trial court did not abuse its discretion.[7] We overrule Sanchez's third issue.

## C. Charge Error Regarding Presumption

Sanchez's fourth issue argues he suffered egregious harm from the omission of an instruction regarding presumptions in the jury charge. Section 28.03(c) provides that "it shall be presumed that a person who is receiving the economic benefit of public . . . power supply, has knowingly tampered with the tangible property of the owner" if the power supply has been diverted from passing through a metering device, prevented from being correctly registered by a metering device, or activated by any device installed to obtain power without a metering device. TEX. PENAL CODE ANN. § 28.03(c)(1). The jury was given an instruction regarding this presumption, but was not given the instruction required by penal code section 2.05(a)(2)[8] that the

---

[7] The amount of restitution is not limited by the value range of the offense. *See* TEX. PENAL CODE ANN. §§ 28.03(b), 28.06(d). The court of criminal appeals rejected an argument that the value range determining the grade of a theft offense limited the amount of restitution that could be ordered. *See Campbell*, 5 S.W.3d at 697–99 (holding trial court may determine from record that actual loss to victim exceeds property-value range for which jury convicted defendant); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.037(c) (trial court shall consider the amount of the loss sustained by any victim and other factors the court deems relevant). "Conviction by the jury for a certain property-value does not restrict the restitution amount that the trial judge might find to be the justified amount." *Campbell*, 5 S.W.3d at 698. We also conclude the amount of restitution is not limited by the pecuniary loss amounts in sections 28.03(b) and 28.06 if the record supports that the victim suffered a greater loss.

[8] Section 2.05(a)(2) provides that when a statute establishes a presumption as to any fact:

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of

–10–

facts giving rise to the presumption must be proven beyond a reasonable doubt. The State concedes error in the jury charge, but contends Sanchez did not suffer egregious harm from that error.

Because Sanchez failed to object to the jury charge on this basis, reversal is required only if Sanchez suffered egregious harm. *See Hollander v. State*, 414 S.W.3d 746, 749 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In determining whether the appellant suffered egregious harm, we consider: (1) the complete jury charge; (2) the arguments of counsel; (3) the entirety of the evidence, including the contested issues and weight of the probative evidence; and (4) any other relevant factors revealed by the record as a whole. *Hollander*, 414 S.W.3d at 750. Neither party bears a burden of production or persuasion regarding the *Almanza* harm analysis. *Id.*

The charge did not instruct the jury that facts giving rise to the presumption of tampering must be proven beyond a reasonable doubt. While the charge included a general instruction on the State's burden of proof beyond a reasonable doubt, that instruction "fails to educate jurors with respect to the level of confidence they must have in the verity of the predicate facts before they may rely on the presumption to convict." *Hollander*, 414 S.W.3d at 750.

Here, unlike *Hollander*, the State did not rely on the presumption, argue it in closing, or contrast it with the presumption of innocence. *See Hollander v. State*, 406 S.W.3d 567, 577 (Tex. App.—El Paso 2012), *rev'd*, 414 S.W.3d 746 (Tex. Crim. App. 2013). While the arguments of counsel did not inform the jury about the level of confidence in the predicate facts

---

the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

TEX. PENAL CODE ANN. § 2.05(a)(2).

required to use the presumption, the arguments did not did not encourage the jury to rely on the presumption. *Hollander*, 414 S.W.3d at 751.

Next, we consider the entirety of the evidence, the contested issues, and the weight of the probative evidence. *Id.* at 750. The record shows that Sanchez was a person receiving the economic benefit of the public power supply. He admitted living at the house for several years with his wife and their grandson. He identified the property as his house and said the meter was always located on the front of the house. The historical transaction records show that Sanchez called Oncor several times over the years to report outages and incorrect meter readings, and request billing adjustments. The record also indicates that tampering was not a contested issue. Sanchez admitted removing the meter, breaking the seals, and fixing the lug inside the meter base. Evidence was undisputed that Oncor did not give permission for customers to remove the seals or repair the lugs inside the meter. Sanchez's actions in "fixing" the meter were intentional. He admitted having the knowledge necessary to repair a meter or the knowledge to prevent a meter from measuring electricity usage. Although he denied stealing electricity, he told Nichols he would climb the pole and reconnect the power supply after Nichols disconnected it.

Data from the meter installed at the house in October 2012 showed forty-eight power outages over a period of two and a half months, without a corresponding number of calls to Oncor. Sanchez could only say he was home "off and on" for Christmas 2012. He did not offer an explanation for why the meter was out of socket for over 24 hours beginning Christmas Eve of 2012.

Sanchez presented evidence to explain some of the drop in his electricity usage. He testified he and his wife were traveling back and forth to San Antonio to help their daughter with her newborn son who had health issues, but he did not explain how long this travel lasted. He also presented evidence of using non-electric appliances in the house, but admitted the

–12–

appliances were in his house before 2004 and their use would not account for the drop in usage beginning in 2005.

The record does not disclose any other relevant factors. Considering the record as a whole, the likelihood that a properly instructed jury would have found the predicate facts to the requisite level of confidence is high. *See Hollander*, 414 S.W.3d at 751. We conclude from the record as a whole Sanchez did not suffer egregious harm from the charge error. We overrule his fourth issue.

### D. Modification of Judgment

By cross-point, the State argues the written judgment does not accurately reflect the trial court's oral pronouncement of two years of community supervision and incorrectly identifies Sanchez's trial counsel. We note that the record supports these contentions and that Sanchez agrees with the State's cross-point.

When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). This Court has the power to correct and reform the judgment of the trial court to make the record speak the truth when it has the necessary information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the trial court's judgment to reflect the oral pronouncement of two years of community supervision and the correct name of Sanchez's trial attorney.

**CONCLUSION**

We have overruled all of Sanchez's issues and sustained the State's cross-point. Accordingly, we modify the trial court's judgment to reflect the oral pronouncement of two years of community supervision and the name of Sanchez's trial attorney. We affirm the trial court's judgment as modified.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
150098F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GILLERMO FERNANDO SANCHEZ,
Appellant

No. 05-15-00098-CR   V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-81054-2013.
Opinion delivered by Justice Stoddart.
Justices Francis and Evans participating.

Based on the Court's opinion of this date, we **MODIFY** the trial court's judgment as follows:

The Attorney for Defendant section is modified to read, "Matthew Maddox."

The Punishment and Place of Confinement section is modified to read, "ONE HUNDRED AND EIGHTY (180) DAYS STATE JAIL DIVISION, TDCJ, PROBATED TWO (2) YEARS; RESTITUTION."

The judgment is further modified to read: "SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR TWO (2) YEARS."

As modified, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of July, 2016.