# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00032-CR

**Michael Brown, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-07-302005, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michael Brown appeals his conviction for knowingly delivering a simulated controlled substance purporting to be the controlled substance cocaine. Tex. Health & Safety Code Ann. § 482.002(a)(2) (West 2003). The jury found appellant guilty. The trial court found three alleged prior felony convictions (all involving the delivery or possession of cocaine) to be true, enhanced the offense from a state jail felony to a second-degree felony, and assessed punishment at eleven years' imprisonment. *See* Tex. Penal Code Ann. § 12.42(a)(2) (West Supp. 2009).

### POINT OF ERROR

In his sole point of error, appellant contends that "the trial court erred by not directing a judgment of acquittal since the evidence is not sufficient to support a guilty verdict."

There was no motion for a directed or instructed verdict of not guilty,[1] and it is unclear that appellant is contending that the trial court should have acted *sua sponte*. Appellate courts normally treat a complaint that the trial court erred in overruling an instructed verdict motion as a challenge to the legal sufficiency of the evidence, *see Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993), and that is how appellant has briefed his contention. The concern of the State that appellant has also raised a challenge to the factual sufficiency of the evidence is unwarranted. Appellant has not advanced or briefed such separate and distinct issue. *See* Tex. R. App. P. 38.1(h); *Laster v. State*, 275 S.W.3d 512, 518, 519 (Tex. Crim. App. 2009).[2]

**STANDARD OF REVIEW**

In determining whether the evidence is legally sufficient to support the judgment, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The evidence viewed in this light

---

[1] The State argues that appellant did not preserve error for review because he did not file a motion or objection. *See* Tex. R. App. P. 33.1(a). A claim regarding the sufficiency of evidence to sustain a conviction need not be preserved for review at the trial level and a defendant does not waive any right by failing to do so. *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001).

[2] The Texas Court of Criminal Appeals has pointed out that a legal-sufficiency review is a federal due process requirement while a factual-sufficiency review is a creature of state law. *Laster v. State*, 275 S.W.2d 512, 518 (Tex. Crim. App. 2009). These reviews require implementation of separate and distinct standards. *Id.* at 519. "Courts and litigants should not combine their legal and factual sufficiency analyses." *Id.*

and all reasonable inferences drawn therefrom are evaluated in this review. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995).

A reviewing court must consider all evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard for review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 400-01 (Tex. Crim. App. 1992). Appellate courts measure the legal sufficiency of the evidence against a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign, disregard, or weigh the evidence. *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984).

## BACKGROUND

Detective Jason Bryant of the Austin Police Department testified that he had ten years of experience with the department, including three years with the mid-level narcotics division. He explained that his undercover activities included dressing in "club clothes" if he was making undercover buys of narcotics in nightclubs, and "dressing down" in open-air markets but still appearing to have $20 to buy crack cocaine. Bryant estimated that he had made approximately one hundred narcotic buys. He explained to the jury the difference in the appearance of powdered cocaine often found in clubs and rock or crack cocaine more frequently found in open-air markets.

3

He described briefly the manufacture of crack cocaine, and he explained that the end product often looked like a sugar cookie, and that crack cocaine can be sold by breaking off a piece of the cookie. He stated that if the buyer asks for a "nickel," he will get a small piece about the size of a pencil eraser. If the buyer asks for a "20," he will get a larger piece from the "sugar cookie."

Bryant further explained that if a buyer has no "standard drug dealer" or the dealer is in jail or the buyer is from out of town, the buyer will normally visit a known open-air market, particularly if he is seeking crack cocaine. He stated the prospective buyer circles the block and nods to those on the street; he then will be signaled to stop or pull over. The buyer then will be approached by the seller of drugs.

On August 14, 2007, Detective Bryant and Renee Finto, a Lakeway police officer, were working undercover in what Finto referred to as a "cool" car (an unmarked police vehicle). They were apparently dressed in mufti. They drove to the intersection of 12th and Chicon streets in Austin, a known open-air market for crack cocaine where Bryant had made a number of purchases of crack cocaine. Bryant related that they were on a "buy/walk" operation which meant that they would make a buy of crack cocaine and leave. "Close-cover" officers would follow the seller and temporarily stop him for a traffic violation or for some other reason if the seller was on foot. These officers would determine the seller's identification and then release the seller. A warrant of arrest for the seller would later be obtained for the narcotic transaction. Bryant explained that this was necessary to prevent the sellers at an open-air market from believing the locations were being targeted by undercover police.

4

As Bryant and Finto circled the block at 12th and Chicon streets, Bryant received a message from one of the surveillance team over the police radio that a driver of a car following Bryant's vehicle was trying to "flag him down." Bryant observed the car and he (Bryant) stopped his vehicle in a parking lot at the location. Bryant testified that appellant, whom he identified in court, got out of the other car and approached the passenger side of Bryant's vehicle where Finto was seated. Bryant reported that he told appellant he wanted a "20," meaning crack cocaine, and that they had $22. According to Bryant, appellant produced a plastic grocery store bag in which there was a large cookie appearing to Bryant to be crack cocaine. Appellant broke off a piece of the cookie and handed it to Bryant. Finto gave appellant $22 in currency. Bryant asked appellant if the substance was "good" and that appellant indicated "like yeah, it's good." Bryant was of the opinion that what he had been handed was crack cocaine and the size was standard for a "20," normally 0.2 grams of crack cocaine. Bryant testified that it was a quick trade and no pleasantries were exchanged. Bryant and Finto left the scene expecting the nearby surveillance officers to take over at this point.

Officer Renee Finto briefly testified as to her version of the transaction. She stated that she and Bryant as undercover officers were driving around the area of 12th and Chicon streets when they were flagged down by appellant. They drove into a parking lot and appellant pulled his vehicle in next to the undercover vehicle. Appellant got out of his vehicle and approached the passenger side of the other vehicle where Finto was seated. Finto stated that appellant asked "[w]hat we wanted" or "[w]hat we were looking for or something like that." Appellant was told the couple had $22. Appellant broke off a piece of the crack cocaine-appearing cookie that he produced

and handed it to Bryant. Finto handed appellant $22. They then drove away. Finto made an in-court identification of appellant as the seller.

In his testimony, Bryant reported that after he and Finto left the scene, he drove to the nearby police station and contacted Detective Jason Acevedo, who was in charge of the operation. Bryant gave Acevedo the substance obtained from appellant. He then filled out forms relating to the chain of custody while Acevedo "field-tested" the substance. The test revealed that it was not cocaine. Bryant was so sure that it was crack cocaine he asked that it be tested again.

Detective Acevedo testified that he tested the white-rock-like substance brought to him by Bryant that had the appearance of crack cocaine. The trial court sustained appellant's objection to the results of that advanced field test. Acevedo described in detail the procedure used to ensure the chain of custody.

Stacey G. Smith, a forensic drug chemist for the Austin Police Department, testified as to her background and qualifications. She reported on procedures to ensure the chain of custody of substances submitted to the laboratory. She acknowledged that she had received and tested the substance in State's exhibit number 1, identified as the substance received by Bryant from appellant. Smith conducted a chemical analysis on the substance involved and reported that the substance tested was chemically different from crack cocaine. It was not a controlled substance of any kind. She did not testify nor was she asked what the substance actually was.

Appellant did not testify or call any witnesses. Both sides rested and closed.

## APPLICABLE LAW

Appellant was convicted under the provisions of section 482.002(a)(2) of the

Texas Health and Safety Code which provides in pertinent part:

> (a) A person commits an offense if the person knowingly or intentionally manufactures with the intent to deliver or delivers a simulated controlled substance and the person:
>
> . . .
>
> (2) represents the substance to be a controlled substance in a manner that would lead a reasonable person to believe that the substance is a controlled substance.

Tex. Health & Safety Code Ann. § 482.002(a)(2).[3]

Section 482.003 of the Health and Safety Code provides some evidentiary rules for

cases tried under section 482.002(a)(2). The statute provides:

> (a) In determining whether a person has represented a simulated controlled substance to be a controlled substance in a manner that would lead a reasonable person to believe the substance was a controlled substance, a court may consider, in addition to all other logically relevant factors, whether:
>
> (1) the simulated controlled substance was packaged in a manner normally used for the delivery of a controlled substance;

---

[3]    Chapter 482 of the Health and Safety Code defines offenses related to simulated controlled substances. These substances are defined as substances that purport to be controlled substances but are chemically different from the substances they purport to be . . . . Each of the statutory means [under section 482.002 of the Health and Safety Code] is exclusive and distinct.

6 Michael B. Charlton, *Texas Practice*: *Texas Criminal Law* § 30.10 at 439-40 (2d ed. 2001).

(2) the delivery or intended delivery included an exchange of or demand for property as consideration for delivery of the substance and the amount of the consideration was substantially in excess of the reasonable value of the simulated controlled substance; and

(3) the physical appearance of the finished product containing the substance was substantially identical to a controlled substance.

(b) Proof of an offer to sell a simulated controlled substance must be corroborated by a person other than the offeree or by evidence other than a statement of the offeree.

Tex. Health & Safety Code Ann. § 482.003 (West 2003).

Section 482.003 does not require proof of all or any one of the listed factors in order to support a conviction. Such factors are merely circumstances that a court may consider in addition to all other logically relevant factors in determining whether a reasonable person would have believed such substance was a controlled substance. *See Holliman v. State*, 692 S.W.2d 120, 122 (Tex. App.—Waco 1985, pet. ref'd).

## APPELLANT'S ARGUMENT

Appellant's attack upon the legal sufficiency of the evidence to support the conviction is not specifically directed to the lack of evidence to sustain the elements of the offence. Appellant generally refers to "the vagueness and questionable nature of some of the testimony." Actually, appellant appears to complain about evidence that he would have liked the State to have presented.

First, appellant contends that there was evidence of a microphone or microphones available for use in the undercover vehicle but that no videotape of "alleged statements" was produced by the prosecution. There is nothing in the record that any microphone was used or any

8

videotape made. Appellant's trial counsel made no inquiry of the witnesses in this regard. Further, no other relief was requested. Second, appellant complains that there was a lack of evidence about appellant's arrest or detention, either immediately after the transaction or later on a warrant of arrest. Appellant fails to point out how this absence of evidence renders the evidence legally insufficient to sustain the conviction. Appellant argues that if he had been arrested and searched or his vehicle searched immediately after the transaction, the officers might have found the large "sugar cookie" and the $22 given to the appellant. Detective Bryant had described the "buy/walk" procedure as to why the money is not marked or the seller is not taken into custody following the transaction. Appellant was on trial in open court to answer to the indictment against him. Appellant fails to point out how evidence of any earlier arrest or detention on the same charge would render the evidence presented legally insufficient.

Appellant further questions the lack of evidence about the time lapse between the "buy" and the substance being tested by Detective Acevedo. There was no time-frame evidence offered. The "buy" was made on August 14, 2007, and the evidence refers to Detective Bryant driving directly to the nearby police station on that day. The time lapse was not made an issue at trial and appellant does not reveal how this could possibly impact the point of error he has raised.

In addition, appellant lastly asserts without more:

> Discrepancies also exist in the testimony between who the material was delivered to. Also, there was vagueness about the sequencing of the delivery of the substance and the delivery of the money payment. Although it strains credibility to believe appellant gave the substance to the officer before receiving the money, that is, in fact the testimony of the officer.

9

Appellant does not explain how the order in which the money and substance was changed prevents the evidence from being legally sufficient. We do not find that appellant's arguments and assertions have merit.

**DISCUSSION**

We turn now to the logically relevant evidence supporting the legal sufficiency of the evidence. The transaction took place at or near the intersection of 12th and Chicon streets, an open-air market for the sale of crack cocaine. Undercover Detective Bryant had made a number of "buys" at this location, all being purchases of crack cocaine. On August 14, 2007, Bryant and his partner were in this area working undercover. Appellant flagged them down and approached their stopped vehicle. He asked what they wanted or were "looking for." Bryant responded "20" using a street term meaning crack cocaine. Appellant had a large "sugar cookie" clearly appearing to be crack cocaine. He broke off a piece of the cookie, a white rock looking substance, gave it to Bryant, and took $22 from Bryant's partner. In response to Bryant's questions, appellant indicated the substance was "good." The officers immediately left the scene. The substance "field tested" at the police station showed that it was not crack cocaine. The later chemical analysis revealed that the white-rock-like substance was not cocaine or any kind of a controlled substance. Looking to the statutory evidentiary factors available under section 482.003, we find two that are applicable. The "simulated controlled substance was packaged in a manner normally used for the delivery of a controlled substance." Tex. Health & Safety Code Ann. § 482.003(a)(1). Detective Bryant testified that when appellant produced the "sugar cookie" it was wrapped in a plastic bag in the manner normally used by sellers of crack cocaine with one corner of the bag torn, ripped or cut. This was the

10

manner of packaging of other crack cocaine that he had previously purchased undercover. Moreover, the "physical appearance of the finished product containing the substance was substantially identical to a controlled substance." *Id*. § 482.003(a)(3). The experienced narcotic officer Bryant testified that the cookie and the piece given him had the physical appearance of crack cocaine he had purchased in the past. Officer Finto and Detective Acevedo also testified that the substance appeared identical to crack cocaine. When the result of the field test was reported, Bryant wanted the substance tested again because he was convinced that the substance was crack cocaine. Keeping in mind the standard of review and considering all of the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged under the Tex. Health & Safety Code Ann. § 482.002 (a)(2). We overrule appellant's sole point of error.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Patterson, Henson and Onion*

Affirmed

Filed: February 10, 2010

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).